Statement of Facts.

[No. 1020.]

WILLIAM SOLEN ET AL., APPELLANTS, *v.* VIRGINIA AND TRUCKEE RAILROAD COMPANY, RESPONDENT.

INTEREST TO BE RECOVERED MUST BE INSERTED IN THE JUDGMENT.—If a party claims, and is entitled to, any interest, it should be inserted in the judgment. (Hawley, J.)

INTEREST ALLOWED IN ACTIONS EX DELICTO.—Interest is allowable upon the amount of a judgment recovered in an action *ex delicto.* (Beatty, C. J., and Leonard, J.)

ACTION UPON JUDGMENT—NECESSITY FOR.— An action upon a domestic judgment can be maintained in this state when there is no necessity for bringing the suit, except such as has been occasioned by the fault of the judgment creditor, and in such an action interest can be recovered, although no interest is specified in this judgment. (Dissenting opinion of Beatty, C. J.)

IDEM.—Neither the common law nor the practice gives to a judgment creditor an absolute right of action on a domestic judgment, unless such action is necessary, in order to enable plaintiff to have the full benefit of his judgment; he can not by his own neglect cause the necessity, and then invoke that condition in justification of the suit. (Concurring opinion of Leonard, J.)

APPEAL from the District Court of the First Judical District, Storey County.

The conclusions of law drawn by the district court, and referred to in the opinions, are as follows:

1. Such judgment of William Solen against defendant drew no interest, for that the same was not specified therein, and for that the attorneys of said Solen waived the same by the form of judgment by them prepared.

2. The payment by defendant into court, on the twenty-ninth day of June, of the sum of fifteen thousand two hundred and forty-four dollars and sixty-five cents, satisfied, paid, and discharged the judgment of record and docket against defendant, and in favor of William Solen and his assignees.

3. That the plaintiffs have no cause of action against defendant, and it is entitled to recover costs herein against them.

*C. H. Belknap and Kirkpatrick & Stephens,* for Appellants:

I. Under the statute of Nevada, "concerning money of account and interest" (1 Comp. L. 4), the judgment sued upon in this cause bears interest from the date of its entry at the rate of ten per cent. per annum. All money judgments bear interest under this statute, whether founded in contract or tort—whether for debt or damages.

II. It is wholly immaterial that the judgment is silent as to interest. The interest is prescribed and affixed to the judgment by the statute. The judgment bears the legal rate of interest prescribed by the statute in force at the date of its rendition. When the rate claimed is the legal rate of ten per cent. per annum, it is not necessary to specify it in the judgment.

III. Interest is recoverable by an action on the judgment. And the action is maintainable, even though the interest could have been collected by execution on the judgment. These are concurrent remedies. (Freeman on Judgments, sec. 432; 1 Am. L. Cases, 621, 622; *Klock* v. *Robinson,* 22 Wend. 157.)

*B. C. Whitman,* for Respondent:

I. The suit of appellants should never have been entertained by the district court; they had, or had not, a right to execution upon the judgment of *William Solen* v. *Virginia & Truckee Railroad* (which sounded in damages for injury to his person). If they had such right, then no suit could be maintained. If such a rule ever existed, the minute provisions of the practice act of this state has destroyed its reason. (*Pitzer* v. *Russel,* 4 Or. 124; *Strong* v. *Barnhart,* 5 Id. 499. See, also, *Wells* v. *Dexter,* 1 Root, Conn. 253. Dissenting opinion in *Williams* v. *Dennison,* 16 Conn. 28; *White* v. *Hadnot,* 1 Port. (Ala.) 419; *Lee* v. *Giles,* 1 Bailey, S. C. 449.) If appellants had no right to an execution, then certainly they had no cause of action. If it has been decided that they had no right to execution, how can the *sequitur* be avoided? (*Solen* v. *V. & T. R. R.,* 14 Nev. 405).

II. Appellants, Kirkpatrick, Stephens & Belknap, had no

cause of action against respondent. They each and all claim as assignees of Solen the original judgment creditor. (Freeman on Judgments, sec. 424; *Love* v. *Fairfield*, 13 Mo. 300; *Getchell* v. *Maney*, 69 Me. 442.) .

III. No interest can follow or flow from any judgment, except a judgment for money. That appellants are wrong in their idea, that a written contract absolutely silent on the subject of interest, would bear any after due, is evident from the reading of the statute, that refers to the rate of interest; so if a contract in writing calls for interest, failing to specify the rate or time of commencement, ten per cent. follows after due; but interest must in any event be called for.

*C. H. Belknap, and Kirkpatrick & Stephens,* for Appellants. in reply:

I. Kirkpatrick, Stephens & Belknap are proper parties. (Moak's Van Santvord's Pl. 68; *Grain* v. *Aldrich*, 38 Cal. 514; *Cook* v. *Genessee Ins. Co.*, 8 How Pr. 514.)

II. Plaintiffs could not have accepted the money paid on the twenty-ninth of June, without acquiescing in the condition on which it was paid, and abandoning all claim to interest on the judgment. Defendant might as well have kept the money in its own coffers; for, by the conditions it annexed, plaintiffs were precluded from accepting, or touching it. Plaintiffs refused to accept it, and, therefore, it could not operate as payment to them, in whole or in part. (7 Wait's Actions and Defenses, 390, 391, 405; *Hall* v. *Holden*, 116 Mass. 172; *Cole* v. *Champlain T. Co.*, 26 Vt. 87; *Tooke* v. *Bonds*, 29 Texas, 419.)

By the Court, Hawley, J.:

On the thirteenth day of December, 1876, William Solen, in an action for damages for personal injuries, recovered judgment against the Virginia and Truckee Railroad Company for fifteen thousand dollars. The judgment, as entered, was prepared by the attorneys for Solen, and did not call for any interest.

On the twenty-fifth day of February, 1878, Solen assigned

to C. H. Belknap, M. Kirkpatrick, and James A. Stephens (his attorneys), one half of said judgment.

An appeal was taken by the Virginia and Truckee Railroad Company to the supreme court, and the judgment was affirmed. (13 Nev. 106.) The remittitur from the supreme court was issued June 22, 1878.

On the twenty-ninth day of June, 1878, the defendant paid to the clerk of the district court, " as and for the use of plaintiffs, the sum of fifteen thousand two hundred and forty-four dollars and sixty-five cents, in gold coin of the United States," which payment was intended as full satisfaction of said judgment and costs, and was the full amount of said judgment and costs, exclusive of interest. The plaintiffs claimed interest on the judgment, and refused to accept the amount paid. in by defendant in satisfaction thereof.

· This suit was instituted July 1, 1878, upon the judgment to recover the full amount therein named, with interest thereon, from the date of its rendition. The cause was tried before the court, without a jury, and, upon the facts presented, the court rendered judgment for defendant.

It was decided in *Solen* v. *V. & T. R. R. Co.*, 14 Nev. 405, following the rule announced in *Hastings* v. *Johnson*, 1 Nev. 617, " that when the judgment of the court is silent as regards the collection of interest, it does not authorize the issuance of an execution calling for interest." Under this rule, if a party claims and is entitled to any interest, it should be inserted in the judgment. In this case the judgment, as drawn by plaintiffs' counsel, did not include interest.

No motion was thereafter made to amend the judgment in this respect.

This suit was not commenced until after the defendant had paid into court the full amount of the judgment and costs.

The conclusions of law, as found by the district court, are, in my opinion, correct.

The plaintiffs were bound by the judgment as entered.

The defendant, upon the payment of the amount called for in the judgment, had the right to have the judgment satisfied.

This result, in my opinion, follows, regardless of the question whether the statute authorizes interest to be included in judgments founded in tort, or not.

The judgment of the district court is affirmed.

BEATTY, C. J., dissenting:

In December, 1876, the plaintiff, Solen, in an action for damages for injuries to his person, obtained a verdict against the defendant for fifteen thousand dollars.

Thereupon the clerk of the court entered and recorded a judgment in his favor, in precise accordance with the form of a judgment which had been prepared and furnished by one of his attorneys. The judgment so entered was for fifteen thousand dollars, and the costs of the action taxed at one hundred and eighty-one dollars. As to interest it was silent.

The defendant having appealed from that judgment, it was finally affirmed by this court (13 Nev. 106), and the remittitur filed in the district court June 22, 1878. On the twenty-ninth of June, and before the bringing of the present suit, the defendant paid to the clerk of the district court, for the use of plaintiffs, the full amount of the original judgment, with the accruing costs. This was tendered as full payment and satisfaction of the judgment, but the plaintiffs, claiming that they were entitled to interest, declined the tender, and thereupon commenced this action to recover the amount of the original judgment, together with legal interest thereon from the date of its rendition. The co-plaintiffs of Solen are assignees of a portion of the judgment upon which the suit is founded.

The cause was tried in the district court, without a jury, and judgment rendered in favor of the defendant, upon the ground that the original judgment in favor of Solen, failing to specify interest, was not entitled to draw interest, and was fully paid, satisfied, and discharged, by the payment to the clerk, on the twenty-ninth of June, 1878.

From this judgment, and from an order overruling their motion for a new trial, the plaintiffs appeal.

The questions which have been principally discussed by counsel, and which are of vital importance to the decisions of the cause, are the following:

1. Is interest allowable upon the amount of the judgment recovered in an action *ex delicto?*

2. Can an action upon a domestic judgment be maintained in this state, when there is no necessity for bringing the suit, except such as has been occasioned by the fault of the judgment creditor?

The first of these questions is determined by the proper construction of sections 32 and 33 of the Compiled Laws, which read as follows:

Sec. 32. "When there is no express contract in writing fixing a different rate of interest, interest shall be allowed at the rate of two per cent. per annum, for all moneys after they become due on any bond, bill, or promissory note, or other instrument of writing, on any judgment recovered before any court of this territory, for money lent, for money due on the settlement of accounts from the day on which the balance is ascertained, and for money received to the use of another."

Sec. 33. "Parties may agree in writing for the payment of any rate of interest whatever, on money due, or to become due, on any contract. Any judgment rendered on such contract, shall conform thereto, and shall bear the interest agreed upon by the parties, and which shall be specified in the judgment; *provided,* only the amount of the original claim or demand shall draw interest after judgment."

Counsel for respondent contends that the words, "·on any judgment recorded in any court in this territory" (sec. 32), are qualified and restrained by the language which follows, and that, with the exception of the cases provided for in section 33, no judgment will bear interest, unless it is re-covered "for money lent, money due on the settlement of accounts," or "for money received for the use of another." He claims this construction not only upon the ground that

such is the natural import of the language of the statute, but because it had been so construed by the supreme court of California long before its adoption in this state.

The California case, which is relied upon in support of the latter proposition, is *Osborn* v. *Hendrickson*, 8 Cal. 31. But, as was pointed out in the later case of *Burke* v. *Caruthers* 31 Id. 471, the head note to *Osborn* v. *Hendrickson* is not a correct syllabus of the decision. It was not decided that the judgment therein bore no interest after rendition, but merely that the demand in suit bore no interest before judgment. The question here involved, does not seem to have arisen in California before our adoption of her statute; but since that time it has frequently been decided by the supreme court of that state, that all judgments—in actions *ex delicto* as well as in actions *ex contractu*—draw legal interest, unless a different rate is therein specified. (See 31 Cal. 466; 34 Id. 246; 38 Id. 548; 44 Id. 366; 45 Id. 193; 46 Id. 204, 320.)

According to these decisions, the words " on any judgment," etc., are to be read in connection with the language which precedes them—making this the sense of that portion of the section:

"Interest shall be allowed at the rate of ten per cent. per annum for all moneys after they become due on any bond," etc. (for all moneys after they become due), " on any judgment," etc.

Independent of all considerations of policy, justice, and consistency, this reading is, we think, quite as natural as that contended for by respondent. But it is strongly confirmed by such considerations. There is no sort of reason why a judgment—which in every instance is regarded as a contract of the very highest character, imposing an obligation, and importing a promise to pay a liquidated sum—should not draw interest at the rate allowed upon other liquidated demands. If, therefore, we were without precedent to guide us, we should be inclined to construe this statute as it has been construed in California, and consequently, we can have no hesitation in following the repeated decisions of the supreme court of that state.

Having thus reached the conclusion that Solen was enti-
tled to have a judgment bearing interest at the legal rate
entered in the former action, the next question is: What
consequences follow from the act of his attorney in having
a judgment entered which was silent as to interest?

One consequence, undoubtedly, was, that he could not
issue execution for interest. Such was the decision of this
court in *Hastings* v. *Johnson*, 1 Nev. 613, and that decision,
settling a question of practice, we have felt constrained to
follow, without reference to its correctness as an original
proposition. (14 Nev. 405.)

It must be regarded, therefore, as the settled doctrine of
this court, that no execution can issue for interest upon a
judgment which fails to specify upon what portion thereof
and at what rate interest is collectible.

This doctrine, however, and the ground upon which it
rests—the old familiar maxim, that the execution must fol-
low the judgment—are entirely insufficient to sustain the
inference that judgments of the character described do not
bear interest.

The right to collect interest by execution is of recent
statutory origin. Before the enactment of statutes expressly
conferring the right, it was always held that interest could
not be levied by execution, because, and only because, the
execution must follow the judgment. At the same time the
recovery of interest in actions upon judgments was almost
universally allowed, and, indeed, the recovery of interest
seems to have been one of the principal reasons for bring-
ing suits upon judgments, in cases where the time for issu-
ing execution had not passed.

If, therefore, it be true, as counsel for appellants con-
tends, that a judgment creditor has an absolute right to
sue his judgment over again at his own pleasure, there is
no warrant for the conclusion of the district court, that the
original judgment in favor of " Solen against the defendant
drew no interest, for that the same was not specified therein,
and for that the attorneys of said Solen waived the same by
the form of judgment by them prepared."

There is no pretense that there was any actual intention

upon the part of Solen or his attorneys to waive the right
to collect interest on the amount of his original judgment.
The conclusion that there was a waiver rests solely upon the
argument that every man is presumed to intend the neces-
sary consequences of his voluntary acts, and that the
necessary consequence of entering judgment without speci-
fying interest therein, is to deprive the judgment creditor
of the only means of collecting it—*i. e.*, by execution on the
judgment. If these premises were admitted, the conclu-
sion would undoubtedly follow, that Solen waived his right
to collect interest. But they are not admitted. On the
contrary, the appellants insist that the right to sue on a
judgment is a remedy always concurrent with the right to
issue execution thereon, and that it may be resorted to at
the mere pleasure of the judgment creditor, as often as he
chooses, and without the allegation or proof of any circum-
stance tending to show that an execution would be ineffect-
ive. In opposition to this view, and in support of the
conclusions of the district court, counsel for respondent
contends that the right to sue upon a judgment, if it exists
at all under our code of·practice, is confined to those cases
in which a necessity therefor has arisen without the fault of
the judgment creditor.

It is assumed, in support of this. proposition, that at
common law the right to sue upon a judgment was a quali-
fied right, not exercisable at the option of the creditor, but
only in those cases in which ordinary process for the en-
forcement of the judgment had ceased to be available or
was insufficient to give it full effect. And it is argued that,
although a suit was formerly maintainable upon a judgment
for the purpose of collecting interest, though the time for
issuing execution had not expired, the statute of this state,
in giving the power to collect interest by execution, has
done away with the necessity, and consequently with the
right, of suing for that purpose; and that the design of the
statute, to supersede the remedy by suit, can not be frus-
trated by the act of the party in entering his judgment so
defectively that an execution for interest can not issue
thereon.

Whatever force there may be in this argument, manifestly depends upon the correctness of the assumption upon which it is founded.

If it is not correct, and if, on the contrary, an action on a judgment was maintainable at common law as a matter of course, then there would seem to be no reason why these plaintiffs should not recover according to the prayer of their complaint.

This, then, is the question to be decided: Did an action on a judgment lie as a matter of course at common law?

There is some conflict in the decisions of the courts of the United States on this point, but the decided weight of judicial opinion is in the affirmative.

Mr. Freeman, in his work on judgments (sec. 432), has referred to most of the cases in which it has been directly adjudicated, and they unquestionably sustain his statement, that "at common law a party has a right of action upon his judgment as soon as it is recovered. This right is not barred nor suspended by the issuing of an execution; nor because, from having the right to take out execution, the plaintiffs' action seems to be unnecessary."

In addition to the cases cited by Mr. Freeman, I call attention to the following:

In *Headley* v. *Robey*, 6 Ohio, 524, the court say: "It is one of the first principles we learn in relation to the action of debt, that it may be sustained on a record of judgment, and when the judgment is obtained, and the record made up, the right of action is complete.   *   *   *   The right to issue execution on a judgment is a remedy cumulatory only; and I know of no law which would deny to the party a right of action on the judgment, if he chose that remedy, because he could issue execution."   To the same effect are *Davidson* v. *Nebaker*, 21 Ind. 334, and *Greathouse* v. *Smith*, 3 Scam. 541.   (See also *Scofield* v. *White*, 29 Vermont, 330; *Tarbell* v. *Downer*, Id. 339; *Clark* v. *Goodwin*, 14 Mass. 237; *Thomson* v. *Lee County*, 22 Iowa, 210; *Klock* v. *Robinson*, 22 Wend. 157; *O'Neal* v. *Kittredge*, 3 Allen, 470; *Linton* v. *Hurley*, 114 Mass. 76; *Wilson* v. *Hatfield*, 121 Id. 551.)

In Connecticut, the point had been decided both ways in

the superior court, and when, in 1822, it came before the supreme court of that state, it underwent a very thorough discussion. The whole court agreed that at common law an unqualified right to sue on a judgment followed necessarily from the implied promise of the debtor to pay it, and it was held that the common law rule was in force in that state. On the latter point, one justice dissented, but this circumstance only gives additional weight to the unanimous opinion of the court on the principal question. (See *Denison* v. *Williams*, 4 Conn. 402.)

In opposition to this strong current of authority, I find a *dictum* of the supreme court of Alabama (*White* v. *Hadnot*, 1 Porter, 419), which was in effect repudiated by the decision in a later case (*Kingsland* v. *Forrest*, 18 Ala. 519), a decision of the supreme court of South Carolina (*Lee* v. *Giles*, 1 Bailey, 449), in which an attempt was made to show that, at common law, suit upon a judgment was only allowed after the expiration of the year and a day within which execution could be issued, and a decision of the supreme court of Oregon (*Pitzer* v. *Russell*, 4 Oregon, 124), in which an opinion, mistakenly attributed to Baron Comyn, is made the ground of an inference, that the action at common law was allowed only as a means of collecting interest. A reference to the English cases, and text-writers cited in these opinions, will, I think, show very clearly that they give no countenance to the doctrine, that the *right* to sue on a judgment was subject to any sort of condition or qualification. The right to sue, and the necessity for suing, are two very distinct things, and the absence of the latter by no means implies the absence of the former. In respect to judgments, the theory of the law was, that they implied a promise, on the part of the debtor, to pay, and from that theory the right of action necessarily followed. But the right was not often exercised, except when other means proved ineffective.

By reference to the cases above cited, however, it will appear that in this country actions have been frequently brought on judgments where there was no necessity for bringing them, and undoubtedly the same thing must have

happened frequently in England.   Still, no English case has
been found in which the right to maintain the action was
denied on any such ground, and the English text-writers
(Selwyn, Tidd, Chitty) all say without qualification that the
action of debt lies upon a judgment.   To this it might be
answered, that in England the necessity always existed in
order to collect interest on the judgment ; and the answer
would be sufficient if it were not for the fact that actions on
judgments were frequently maintained in England in cases
in which no interest was recoverable.   (See cases cited by
Judge Cowen in *Klock* v. *Robinson,* 22 Wend. 162.)

Upon the great weight of authority, I think, it must be
held that the right to sue upon a judgment was absolute at
common law; and that the common law rule prevails in this
state I do not understand counsel to make any serious ques-
tion.   The proposition is conceded in *Pitzer* v. *Russel, supra,*
that the creation of a new remedy for a private grievance
(as the right to issue execution for interest) does not by
implication abolish an existing right of action (p. 126), and
it is not pretended that the common law right, whatever it
was, has been expressly legislated upon in this state.

That the right to sue, instead of issuing execution on a
judgment, is capable of being abused for purposes of op-
pression, is certainly true, and so is it true of other kinds of
actions, and notably so of attachments, but the remedy for
such abuses lies with the legislature, and not with the
courts.

For these reasons, I think the judgment and order appealed
from should be reversed, and the cause remanded.

LEONARD, J., concurring:

I fully agree with the reasoning and conclusion of Chief
Justice Beatty upon the first question discussed in his opin-
ion, that is to say, Solen was entitled to have judgment
entered in his favor in the first action, specifying that the
amount of damages recovered should bear interest until
paid, at the rate of ten per cent. per annum.   And although,
in my opinion, the decision in *Hastings* v. *Johnson,* 1 Nev.
613, was wrong, still it must be regarded as the settled law

of this state, and it follows therefore, that interest can not be collected by execution upon the original judgment. I also agree that the only consequence of Solen's failure to insert a direction for interest in the judgment in the first action is, that he was thereby deprived of the right to collect it by execution; and further, that thereby he deprived himself of the right to claim that this action is necessary in order that he may receive interest. If it is true, under the law and the facts disclosed, that he could have maintained an action upon the original judgment, and recovered judgment thereon with interest, if a direction for interest had been inserted, then he can do so now, although the original judgment is silent as to interest.

There is also no room for doubt that, at common law, when interest was recoverable only by an action upon the judgment, a party had a right to an action upon his judgment, although he could have had execution for the collection of the principal sum. And I think, from the weight and number of authorities, that he had such right *within*, as well as *after*, a year and a day from the date of his judgment, during which period execution for the collection of the judgment, without interest, could have been issued and enforced.

I am aware, too, that in many states it has been, and is held, that the common law right of action upon judgments continues, notwithstanding no necessity exists therefor, and although the judgment creditor acquires no rights or benefits thereby which he can not have and enforce by the issuance of an execution. I can not subscribe to that doctrine unless the law compels me to do so. I think, under our statute, that all actions upon judgments, except for good cause, are vexatious, oppressive, and useless. They should not therefore, be entertained by courts, unless the law is plainly written that they may be.

It is true, that at common law, actions upon judgments in personal actions were maintainable, as a matter of course, but it is just as true that a good reason always existed therefor. A judgment creditor was always entitled to claim interest in an action upon a domestic judgment at least,

and it was competent to the jury to allow it as damages to the amount due.

The reason mentioned for permitting the action at common law has been removed by statute, and here, no reason exists why it should now be allowed as a matter of course, nor is any suggested, except that at common law the action was maintainable, and that the same rule and right continue in this state.

If it is true that, the common law rule had its origin and justification in necessity, which was that, without it, judgment creditors could not otherwise recover their rights, then I can not hold that the action may be maintained in this state, except in those cases, where, without his fault, the creditor, by an action, can avail himself of some benefit to which he is entitled, but which he can not have by execution upon the judgment already obtained and in force. It seems to me that to hold otherwise is going beyond the common law. And, outside of authority, I am impressed with the thought that, a law which derived its force and authority from the universal consent and immemorial practice of a just and intelligent people, the evidence of which depends upon the general practice and judicial adjudications of courts, must have been based upon just principles, and designed for some benefit; and that naturally, whatever became a part of that law was demanded by the necessities and well-being of the people as they were then situated.

" A great portion of the rules and maxims which constitute the immense code of the common law grew into use by gradual adoption, and received from time to time the sanction of the courts of justice, without any legislative act or interference. It was the application of the dictates of natural justice and of cultivated reason to particular cases. In the just language of Sir Matthew Hale, the common law of England is ' not the product of the wisdom of some one man or society of men in any one age, but of the wisdom, counsel, experience, and observation of many ages of wise and observing men.' " (1 Kent's Com. 471.)

Now, the reason for permitting the bringing of actions, for supplying remedies, has always been the same. Under

the common law it was, and under statutes it has been and
is, to enable the plaintiff, through the courts, to obtain
something to which he shows himself entitled, but which
the defendant withholds from him, or to which he denies
plaintiff's alleged right; something which he has not when
the action is commenced, and which the court can give. It
is preposterous to ask a court to award the same thing over
and over again; still that is just what it is said may be de-
manded as a right, because, at common law, judgment cred-
itors could institute fresh actions so long as their judgments
remained unsatisfied.  No plaintiff should be permitted to
occupy the time of a court, unless with a show of right, he
can, at least, claim relief which he has not when the action
is brought.  It would be no more senseless or useless to
permit repeated actions upon judgments in ejectment, than
is the rule claimed in this case in relation to money judg-
ments.

Under our statute, a party recovering judgment for any
sum, may, by execution, collect the amount awarded, with
interest and costs; and he can do no more at any time, no
matter how many actions he may bring, nor can he at last
enforce payment or satisfaction except by execution.  What
he may do at first he must do at last.  Why should a party
be allowed thus to fritter away the time of a court?  Why
should he be permitted thus to torment an unfortunate
debtor?  He says to the court: "I now have all the relief
I can possibly get under the law; I have a judgment for all
that is due, which I can collect with interest and costs out
of the debtor's property, and I can be no better off if I get
another judgment like the one I now have; still, I demand
that the judgment be repeated as often as it suits my caprice
or vengeance to have it done, until the judgment is paid."
Aside from the common law rule as it is claimed to be, it
would not be urged, except under a statute, that such prac-
tice would be upheld.  Courts would not thus occupy their
time, and they would not permit tribunals instituted for the
purpose of protection to become instruments of oppression.
They would say to judgment creditors claiming no addi-
tional relief: "You have received every right and benefit

that the law can give you—all the relief that you can claim
or now ask; if you can not collect your money now, neither
can you after receiving anew what you already have, and
we will not entertain your action." It has been said that
the debtor may satisfy the judgment, and thus save himself
further annoyance and expense. That is not a sufficient
answer. So far as courts are concerned, it is no answer;
and as to the debtors, it may be replied, that if they have
property subject to execution, it may be seized and sold in
satisfaction of the first judgment as well as the last, and if
they have it not, it is wrong and inhuman to further increase
burdens which are already beyond the power of debtors to
bear.

What has been said concerning the impropriety of per-
mitting repeated actions upon judgments independently of
the common law, was equally true under that law, if it is
certain, as claimed, that they were allowed, simply because
judgments were the highest evidence of indebtedness, and
not because, thereby, some additional right could be given
and acquired; that is to say, under the common law, the
creditor named in a domestic judgment, in a personal ac-
tion, for a year and a day subsequent to its date, could
acquire by execution on the first judgment, all the benefits
that he could have at any time by other actions, except
interest subsequent to the date of rendition; that had to be
recovered by an action in the form of damages for deten-
tion, or not at all; and if the reason for the rule allowing
actions like this, was not that, thereby, the creditor might re-
cover what he was entitled to receive, and what he could
not otherwise obtain, then the common law rule—always
regarded as harsh and oppressive—was established for no
better reason than exists here for its continuance.

The foregoing is not said for the purpose of justifying
any departure from the common law as it was in fact, and
as it is in this state, when considered in connection with
our statutes in relation to the collection of interest upon
judgments; but to show the improbability of the establish-
ment of a rule allowing actions like this, except in cases

where some further right, not obtainable under the first judgment, might be acquired thereby.

As before intimated, there was a good reason why actions upon domestic judgments were permitted at common law, as a matter of course, and why they were necessary; which was that, in an action upon the judgment, interest was always claimable; and generally, if not always, it was collectible as damages, and in no other way. And if it is true that, there were cases where interest was not allowed, finally, as damages in actions at law upon domestic judgments—although I am unable to find them—still it is sufficient to sustain the position I am endeavoring to establish, that interest was *always claimable*, since the general rule was, that upon such judgments, interest could be recovered, and there was no established rule that it could not be collected, except in cases where the original debt carried intrest.

But let us consult authorities. In the first place, by the only form given by Mr. Chitty for a declaration in debt upon a judgment, the pleader is required to " insert a demand for damages sufficient to cover interest." (2 Chitty on Plead. 483.)

In *Stewart* v. *Peterson's Executors*, 63 Pa. St. 231, the court said: " At common law, where a party had recovered a judgment in a personal action, and suffered a year and a day to elapse without taking out execution, he was driven, in order to reap the fruits of it, to a new action of debt upon the judgment. The statute of Westminster 2, 13 Edw. I., st. 1, c. 45, first gave a writ of *scire facias* in such a case, as was the law previously in real actions. * * *

The right to resort to the former action still remained, and it seems to be the settled doctrine, that it might be maintained as well within the year as afterwards; so that, even though the party might issue execution, he could still sue an original in debt." * * * (Citing English and American authorities.) " It is not a valid objection to the action, that at the time it was commenced, the plaintiff could have proceeded by execution upon the original judgment." (Citing several American cases.)

" *The reason for this was,* that at common law, the plaintiff could have execution only for the amount of the judgment without interest. In order to recover that, he must resort to a new action. Hence our Act of 1700 (1 Smith's Laws, 7) provided that, ' lawful interest shall be allowed to the creditor for the sum or value he obtained judgment for, from the time the said judgment was obtained till the time of sale, or till satisfaction be made.' There exists no reason why the same rule, which, as we have seen, obtains in actions of debt on judgment, should not apply to proceedings by *scire facias,* which have so completely and so properly taken their place in this state. Indeed, a *scire facias,* on a judgment has, with us, all the qualities and incidents of an action. The judgment in it is *quod recuperet,* not as elsewhere, merely an award of execution.   *   *   *   It bears interest on the whole amount recovered, including interest on the original judgment, while in England, on the contrary, in a *scire facias,* no damages are recoverable, and of course, no interest.   *   *   *   And though the reason for bringing a new action, that in that way only can interest be recovered, does not exist in Pennsylvania, yet there may be another and equally good reason for it here, which is that it is necessary to secure a new, or continue the old, lien upon the land of the debtor.   *   *   *   The Act of Assembly   *   *   *   explicitly declares that ' no order or rule of court, or any other process or proceeding thereof, shall have the effect of obviating the necessity of a revival by *scire facias* to continue the lien of judgment,' and specifies particularly .*   *   *   ' an execution issued within a year and a day from the rendering of such judgment.' The record before us exhibits a *scire facias post annum et diem,* to revive and continue the lien of a judgment, and if the plaintiff below had a valid judgment against the defendant, he had a right to prosecute such writ in order to obtain a new judgment which would attach as a lien to the defendant's lands, even though he might have been entitled to an alias *fieri facias* grounded upon the *fieri facias* which appears to have been issued."

If I understand the language quoted, it means that, the

reason why the judgment creditor could maintain an action upon the original judgment at common law, was because he could have execution for the amount of the judgment only, without interest, and in order to recover that he was driven to a new action. And the reason why the judgment upon *scire facias* was sustained (since the original judgment bore interest under the laws of that state, which could be collected by execution) was because there existed *another* sufficient reason for the new action.

I quote also from Bacon's Abr., vol. 2, 356: "It seems clearly agreed that an action of debt may be brought upon a judgment in B. R., notwithstanding a writ of error brought in the exchequer chamber; for though the writ of error be a supersedeas to the execution, yet the duty remains upon record, and it is but reasonable the party should have this remedy for his damages for forbearance." (See also *Pilzer* v. *Russell*, 4 Or. 130.)

In *Creuze* v. *Hunter*, 2 Ves. Jr. 161, Lord Chancellor Loughborough, in reply to counsel, said: "You argue upon the effect of a judgment at law; but would carry a master's report farther; as upon a judgment at law no interest subsequent to the judgment can be recovered. You may bring a fresh action upon it as a new cause of suit; but you can not levy for it, or charge the land under the *elegit* with the intermediate interest from the date of the judgment." (See further, to the same effect, page 166, and *Watson* v. *Fuller*, decided in 1810, 6 Johns. 284.)

In *Entwistle* v. *Shepherd*, 2 T. R. 79, Buller, J., used the following language: "It has been said that if this rule (to show cause) were made absolute, the plaintiff would be deprived of interest on the judgment pending the writ of error in parliament; it is a question for the jury to say whether or not they will give interest on the judgment in the name of damages. For interest may be recovered in an action on the judgment, if it be not the practice of the court to allow interest in the costs." (See, also, *Frith* v. *Leroux*, Id. 59.)

In *Hilhouse* v. *Davis*, 1 Maule & Selwyn, 169, it appears that under an act of parliament, at the assizes in Bristol,

before Wood, B., the plaintiff was awarded certain damages by a jury, as compensation for injuries done to his property, in constructing certain works and improvements authorized to be made by parliament for improving the port of Bristol. Judgment was given by Baron Wood for the amount of the award, which sum was demanded, but not paid. Thereupon an action was brought to recover the same, with damages for non-payment. The trial was had before Chambre, J., at the assizes, in Bristol, who directed the jury that they might give damages for the detention of the debt, and that the natural criterion of those damages was interest on the sum awarded by the jury. A verdict was found accordingly, and a rule *nisi* was obtained in the court of king's bench, for reducing the verdict to a sum exclusive of interest, on the ground that the jury were not authorized to give interest, but only nominal damages.

At the hearing, it was suggested by Le Blanc, J., that there was no judgment; that a judge of assize could not pronounce judgment under the award. Lord Ellenborough, C. J., replied, that if the assessment did not amount to a judgment, it became, at least, a liquidated debt from the time of its ascertainment, and by the rule of common law, it was within the general province of a jury to give damages for the detention of the debt. Separate opinions were pronounced.

Le Blanc said: "The jury having given interest, we can not set their verdict aside, without being satisfied that they have done what they were not warranted to do by law. But there is no positive rule of law against their giving interest on a sum ascertained. The rule of law is affirmative, that where a sum is ascertained, and judgment afterwards pronounced thereon, in a court of record, if an action of debt be brought on the judgment, the jury may give interest by way of damages for the detention of the debt. The only question is, whether this may be assimilated to the case of an action on a judgment; and I think it fairly may. * * * From the time of the ascertainment of the jury and the sanction of the judge, it seems marked out as a stage of the proceedings corresponding with that of a judgment recovered in an

action, and therefore, by analogy to that, it should seem that the sum ascertained will bear interest."

Bayley, J., said: "I can not say the jury have done wrong; on the contrary, I think they were right. It is an assessment of damages before a judge of assize, who afterwards gave judgment upon it, and that comes as near to what is properly a judgment as possible."

In *McClure* v. *Dunkin*, 1 East, 436, plaintiff brought *assumpsit* on a judgment recovered in Ireland, and obtained a verdict for the amount of the judgment and interest. The original was upon a bond with a specified penalty, and upon a rule to show cause, before the court of king's bench, why the verdict should not be reduced to the amount of the penalty of the bond and costs, the sole question was, whether the plaintiffs were entitled to recover interest on the judgment beyond the penalty of the bond and costs of the judgment. The court held that, if the action had been upon the bond, the objection that judgment could not be recovered beyond the penalty of the bond, would have been good; "but after judgment recovered, *transit in rem judicatum*, the nature of the demand is altered; and this being an action on the judgment, it was competent to the jury to allow interest to the amount of what was due. In this respect I see no difference between a foreign judgment and a judgment in a court of record here."

"There are two propositions which, I suppose, can hardly be questioned. The first, that at common law, and independently of our act of 1815, no interest could be collected upon an execution under a judgment. The second, that interest might be recovered in an action of debt on a judgment." (*Pinckney* v. *Singleton*, 2 Hill, S. C. 343.)

"It is true, that by the act of 1815, the legislature provided that the interest on contracts which bore interest, might, after judgment, be collected by execution; but this was not intended to alter the common law rule, that in an action of debt on a judgment, interest shall be recovered by way of damages for the detention of the debt. It was the creation of a new and additional remedy whereby the creditor might, in one class of judgments, recover his in-

terest without being driven to an original action." (*Harrington* v. *Glenn*, 1 Hill, S. C. 78.)

The last case was an action on a judgment, and the original demand did not bear interest. Consequently it was not affected by the act of 1815, and it was decided upon common law principles, that the plaintiff should recover interest in the form of damage.

*Bodily* v. *Bellamy* was an action of debt brought in the court of king's bench, in 1756, upon a bond given at Calcutta, where the interest allowed was nine per cent., which was also the rate payable by the conditions of the bond. Plaintiff recovered judgment, and at that time, the penalty of the bond was sufficient to satisfy the whole debt, interest and costs, then accrued. But the defendant, having caused great delay and expense by different methods, the penalty of the bond alone, became insufficient to answer the debt, interest, and costs, finally incurred. Defendant then obtained a rule for the plaintiff to show cause why, upon payment of the whole penalty, together with the costs in the court of king's bench, and the costs of the writ of error, execution should not be stayed, and satisfaction entered upon the record. I quote one paragraph from Lord Mansfield's very able opinion:

"The plaintiff having been kept out of his money by a writ of error brought after verdict, is entitled to a satisfaction for this damage under the statute of Car. II., which obliges the plaintiff in error to give security as well for damages as costs; or he may bring an action of debt on the judgment, and have damages *pro detentione debiti.*" Lord Mansfield said: "The justice of the case is plain, and the law is agreeable to it;" and Mr. Morton, for the defendant, said: "The defendant had better acquiesce in paying plaintiff what was justly and fairly due to him, voluntarily and without further litigation, than to render himself liable to the costs of another action."

In *Thomas* v. *Edwards* (court of exchequer), 2 Anst. 558, referred to by Mr. Justice Cowen in *Klock* v. *Robinson*, 22 Wend. 162, as "a specimen of the English cases," the defendant moved a stay of proceedings on payment of the

money due on the judgment upon which the action was brought, and costs. Plaintiff objected, claiming interest for seven years since judgment. The court said: "If you proceed in your action you can not get interest," and the proceedings were stayed. Subsequently, however (see 3 Anst. 804), there was a reference to a master to compute what was due for debt and costs. He refused to allow interest, and plaintiff obtained a rule for defendant to show cause why the matter should not be referred back to the master, with directions to allow interest. Defendant showed that, "almost the whole sum due on the judgment, was for costs, the allowing interest on which was questionable (14 Vin. Abr. 458, c. 9); at most it was discretionary in the court, and that discretion exercised by the former order."

The court, however, held that the whole debt due on the judgment, carried interest. *Hodgdon* v. *Hodgdon*, 2 N. H. 171, was decided in 1820, and there it was said: "It has been decided that the payment of interest upon a judgment can not be coerced by an execution. (*Watson* v. *Fuller*, 6 Johns. 283.) But a judgment creditor has a most unquestionable right to forbear to collect the whole amount of the judgment, in order to enable him, by an action of debt upon the judgment, to recover the interest. Nor can this right be defeated by a tender of the balance due upon the judgment, and upon the interest of that balance. A judgment creditor is entitled to receive the amount of his judgment, and interest, until it is paid, and a tender of anything short of this, is no bar to an action of debt upon the judgment." (See, also, *Sayer et al.* v. *Austin et al.* 3 Wend. 497; *Berryhill* v. *Wells*, 5 Binney, 58, and note (1) to *Creuze* v. *Hunter*, 2 Ves. Jr. 168.)

The foregoing authorities establish the following conclusions satisfactorily to my mind:

1. The principal reason for the rule that actions upon domestic judgments were maintainable as of course, at common law, was, that thereby and by such means only, a judgment creditor could collect what he was entitled to claim and receive. This conclusion has the sanction of the high-

est authority, and is the only one that is supported by the dictates of reason and justice.

2. Under the common law, and according to the practice of the English courts, after as well as before the declaration of American independence, the general rule was that, interest was recoverable in the form of damages in an action at law, upon the original judgment, if that was wholly or in part, unpaid; but it was not recoverable if the judgment had been entirely satisfied before suit brought. It necessarily follows that in order to collect interest an action upon the judgment was a necessity. It may be that the application of the rule was sometimes capricious, although my research has failed to convince me of that fact; but the rule itself was as certain as any other which allowed damages in any class of cases. But, at any rate, every creditor named in a domestic judgment had the right to claim interest as damages, and generally, if not always, he recovered it; and the right to claim it, and to have a jury pass upon it, was as complete justification of the rule as an affirmative, inflexible rule would have been.

It is said in *Klock* v. *Robinson, supra,* that the English cases are conflicting, but that, in the opinion of Justice Cowen, the balance of opinion was against allowing interest on a judgment, unless the original demand carried interest.

Excluding actions upon foreign judgments and cases in the high court of chancery, where, according to its practice, the allowance of interest was discretionary with the court, when the cause came on for further direction after the master's report (see note (1) to *Creuze* v. *Hunter, supra*), my research has brought me to an opposite conclusion.

The following cases are cited by Judge Cowen: ( *Thomas* v. *Edwards,* 2 Anst. 558, and 3 Id. 804; *Butler* v. *Stoveld,* 1 Bing. 368; *Atkinson* v. *Lord Braybrooke,* 4 Camp. 380, and *Doran* v. *O'Reilley,* 3 Price, 250.)

In the first, as we have seen, interest was finally allowed upon the whole judgment, although it was mostly for costs.

In the second, decided in the court of common pleas in 1823, a judge at chambers held that the plaintiff had no right to interest on the judgment, and ordered a stay of

proceedings upon payment of the judgment and costs. *The plaintiff accepted those amounts*, and afterwards moved for a rule to discharge the order, contending that interest was due on the judgment, when the court referred to *Doran* v. *O'Reilley* (an action upon a foreign judgment), for the rule that interest was allowed only when the original debt carried interest. Cross, for plaintiff, claimed that, at any rate, the party had a right to try the question before a jury, but the court said: "The plaintiff should have refused the sum tendered at the judge's chambers if he meant to persist in his claim for a larger sum;" and that was the whole decision.

If the court intended to decide, or if it had been true, that the plaintiff could not have interest upon his judgment because the original demand did not carry interest, it would naturally have said so, and based its decision upon that ground. But, at all events, it was not so decided, and it is plain that Judge Cowen did not think the court was of that opinion, because he says: "As late as 1823, we find that the justices of the common pleas doubting whether interest might not be allowed even where the original demand did not carry interest. (*Butler* v. *Stoveld, ut supra.*)" Besides, in the very case in hand, he decided that it might be collected as damages, in the action of debt on a judgment for damages.

The case cited from 4 Camp. and the one from 3 Price were actions upon *foreign* judgments; and it is patent that there were good reasons for bringing actions upon such judgments, outside of the question of interest. So should it be admitted that the rule was well settled, that upon *them*, actions could be maintained, although interest could not be recovered, still, those facts would not militate against my conclusion in relation to actions upon domestic judgments.

But, as we have seen, in *McClure* v. *Dunkin*, the court of king's bench, in 1801, held that, in actions of *assumpsit* upon a foreign judgment, the jury could allow interest; and Graham, B., in *Doran* v. *O'Reilley*, said: "Had the plaintiff below brought *assumpsit*, he might have recovered interest in the shape of damages."

It would be in bad taste for me to criticise, unfavorably, the decisions rendered in different states, wherein it has been held as stated by the chief justice; but it is proper to say that, in none of them was there an attempt to discover the reason for the common law rule, except, possibly, in *Denison* v. *Williams*, 4 Conn. 404; and in most of them the question now under discussion was summarily disposed of, by saying, in substance, that at common law an action upon a judgment was sustainable at any time after rendition, although the creditor was entitled to an execution; that the remedy by execution was merely cumulative, and did not take away the common law right of action, and consequently, that the *right* to the latter remedy was unquestionable; all of which conclusions, except the last, I freely concede to be correct, and that is true in a modified sense.

But I insist that, if, under the common law, there was always a necessity for the action, which was the reason why the rule was adopted, it then follows that, the common law rule in fact was and is, that this action may be maintained when a necessity, not caused by the fault of the creditor, exists therefor, and in that case only; and adopting the language of the court in *Pitzer* v. *Russel, supra*, that "the common law reason for the practice is inapplicable in a state where every judgment bears interest collectible by execution, and where interest can be obtained equally well without an action. It is a part of the common law that where the reason of the rule fails, the rule falls with it."

A hasty glance at the decisions supporting these views must suffice.

In *Pitzer* v. *Russel*, the court discussed the precise question here presented, and came to the conclusion to which I have arrived. Referring to *Clark* v. *Goodwin*, 14 Mass. 238, decided in 1817, the court did erroneously attribute to Chief Baron Comyn language which was used by the court in the Massachusetts case, and not by Baron Comyn; but the only result of the error is, that *Clark* v. *Goodwin* becomes the authority for the doctrine announced, instead of Comyn. It is still high authority. The conclusion of the court in *Pitzer* v. *Russel* is, that "the plaintiff can not claim

a strict right to sue his judgment as often as he may choose without showing any necessity for such course. * * * We conclude, from all the authorities presented, that neither the common law, nor the practice in the various states of the republic, nor anything inherent in the subject, based on sound reason, gives to a judgment creditor an absolute right of action on a domestic judgment, unless such action is necessary in order to enable the plaintiff to have the full benefit of his judgment."

It is true, also, that in *Lee* v. *Giles*, 1 Bailey (S. C.), 452, the court was inclined to the opinion, that at common law, actions upon judgments could not be commenced until after a year and a day, but the decision did not depend upon that conclusion. This is what the court said: " But the whole matter depends on the question, whether a judgment is operative for a year and a day at common law; for if it is, why within that time have any other remedy? No sensible reason can be given why there should be, whilst it can not escape observation that it would be uselessly oppressive if there were. I can never sanction the idea that a new action should be permitted by way of punishing the debtor for not paying his debt. There is something barbarous in it, and wholly inconsistent with the mild, benignant and just spirit of the common law. As long as the judgment is operative, the creditor has the means of enforcing payment, and if the debtor can pay, an execution is as effectual as another suit, and more expeditious. * * * Here the judgment and execution, on which the action was brought, were in full operation, and, therefore, the action was improperly brought. The plaintiff had her remedy, and was not entitled to the further aid of another tribunal, and a nonsuit, therefore, was properly ordered."

And referring to *Lee* v. *Giles*, in *Vandiver* v. *Hammet*, 4 Richardson's Law R. 510, it is said: " The principle of this case is, that no action will lie on a judgment which can be enforced, for the plaintiff already has an enforceable execution, and that is all he would get by his new action." (See, to the same effect, *Shooter* v. *McDuffie*, 5 Richardson's Law 66, and *Parnell* v. *James*, 6 Id. 372).

But it is urged by counsel for appellant, that inasmuch as interest can not be collected by execution in this case, because it was not specified in the judgment, therefore, an action upon the judgment became a necessity, and should be maintained. That position would be tenable, had it not been appellant's fault that a direction for interest was not made, thus enabling its collection by the ordinary method. If it is true, that actions upon domestic judgments can not be maintained, when the creditor can derive no substantial advantage thereby—unless a necessity exists for the action—it must be admitted that appellants can not, by their own neglect, cause the necessity, and then invoke that condition in justification of the suit. It was the law of this state, at the time the original judgment was entered, that interest could be collected under execution, by the insertion of a direction therefor in the judgment, and that without such direction, it could not be so collected. (*Hastings* v. *Johnson*, *supra*.) It appears that appellants prepared the judgment as it was entered, and, knowing the law, caused the condition that is now claimed to be a sufficient justification of this action; and the result is, that they are in the same situation that they would have been in had they inserted a direction for interest in the original judgment, and then instituted this action thereon. (*Pitzer* v. *Russel*, *supra*.)

In my opinion, the third conclusion of law, stated by the court below, is correct; that is to say, "that plaintiffs have no cause of action against the defendant," and that the judgment is correct and should be affirmed.