WILLIAM FOWLE, SURVIVING PARTNER, PLAINTIFF IN ERROR *vs.*
THE COMMON COUNCIL OT ALEXANDRIA.

The plaintiff placed goods in the hands of an auctioneer in the city of Alexandria, who sold the same, and became insolvent, having neglected to pay over the proceeds of the sales to the plaintiff. The auctioneer was licensed by the corporation of Alexandria, and the corporation had omitted to take from him a bond with surety for the faithful performance of his duties as auctioneer. This suit was instituted to recover from the corporation of Alexandria the amount of the sales of the plaintiff's goods, lost by the insolvency of the auctioneer, on an alleged liability, in consequence of the corporation having omitted to take a bond from the auctioneer.

The power to license auctioneers, and to take bond for their good behaviour, not being one of the incidents to a corporation, must be conferred by an act of the legislature; and in executing it, the corporate body must conform to the act. The legislature of Virginia conferred this power on the mayor, aldermen and commonalty of the several corporate towns within that commonwealth, of which Alexandria was then one; " provided that no such license should be granted until the person or persons requesting the same should enter into bond with one or more sufficient sureties, payable to the mayor, aldermen and commonalty of such corporation." This was a limitation of the power. [407]

Though the corporate name of Alexandria was " the mayor and commonalty," it is not doubted that a bond taken in pursuance of the act would have been valid. [407]

The act of congress of 1804, " an act to amend the charter of Alexandria;" does not transfer generally to the common council, the powers of the mayor and commonalty; but the powers given to them are specially enumerated. There is no enumeration of the power to grant licenses to auctioneers. The act amending the charter, changed the corporate body so entirely as to require a new provision to enable it to execute the powers conferred by the law of Virginia. An enabling clause, empowering the common council to act in the particular case, or some general clause which might embrace the particular case, is necessary under the new organization of the corporate body. [408]

The common council granted a license to carry on the trade of an auctioneer, which the law did not empower that body to grant. Is the town responsible for the losses sustained by individuals from the fraudulent conduct of the auctioneer? He is not the officer or agent of the corporation, but is understood to act for himself as entirely as a tavern keeper, or any other person who may carry on any business under a license from the corporate body. [409]

Is a municipal corporation, established for the general purposes of government, with limited legislative powers, liable for losses consequent on its having misconstrued the extent of its powers, in granting a license which it had no authority to grant, without taking that security for the conduct of the person obtaining the license, which its own ordinances had been supposed to require, and which might protect those who transact business with the persons acting

[Fowle *vs.* The Common Council of Alexandria.]

under the clause ? The court find no case in which this principle has been affirmed. [409]

That corporations are bound by their contracts is admitted. That money corporations, or those carrying on business for themselves, are liable for torts is well settled. But that a legislative corporation, established as a part of the government of the country, is liable for losses sustained by a nonfeasance, by an omission of the corporate body to observe a law of its own, in which no penalty is provided, is a principle for which we can find no precedent. [409]

The act of Virginia, passed in 1792, authorises a defendant to plead and demur in the same case. [409]

ERROR to the circuit court for the county of Alexandria, in the district of Columbia.

This was an action on the case brought by the plaintiff in error, against the defendants, in the circuit court, for damages charged to have been sustained by the plaintiff, in consequence of the neglect of the defendants to take due bonds and security from one Philip G. Marsteller, licensed by them as an auctioneer, for the years 1815, 1816, 1817, and 1818, according to the alleged provisions of the statute in that behalf enacted.

The declaration and pleadings are fully stated in the opinion of the court. The defendants filed a general demurrer, and pleaded the general issue.

The counsel for the plaintiff objected to the defendants' demurring, and pleading at the same time to the declaration; but the court overruled the objection, conceiving that they had a right to permit such a course of proceeding under the statute of Virginia, which is in these words: "the plaintiff in replevin, and the defendant in all other actions, may plead as many several matters, whether of law or fact, as he shall think necessary for his defence."

The court then proceeded to consider the matters of law arising upon the demurrer, and decided that the declaration and the matters therein contained, were not sufficient in law to maintain the plaintiff's action; and the plaintiff prosecuted this writ of error.

The case was argued by Mr Swann for the plaintiff, and by Mr Jones and Mr Taylor for the defendants.

For the plaintiff, it was contended, that the circuit court erred;

1. In deciding that the action was not sustainable on the declaration.

2. In permitting the demurrer and plea to be both filed at the same time to the declaration.

Mr Swann, for the plaintiff in error, stated that this case had been before the court in 1826, and was sent back; the court having determined that a new trial should be awarded. 11 Wheat. 320. On the argument on the former hearing, the plaintiff in error, as he does now, contended, that the corporation of Alexandria were liable for the neglect of their duties, and for the damages sustained by individuals in consequence of the same. On that argument, and in support of the principles then asserted, there were cited, Yarborough vs. The Bank of England, 16 East's Rep. 6. Riddle vs. The Proprietors, &c. 7 Mass. Rep. 169. The principles on which the whole claim of the plaintiff rested having been thus fully stated and discussed, and the authorities for them having been vouched, the plaintiff had a right to believe that when the case was remanded upon technical rules, and without a disaffirmance of the principles on which the claim was then placed, they had the sanction of this court. The court will now say whether the question of responsibility is still open.

If it is to be discussed; a reference to the authorities formerly cited, will dispose of it in favour of the plaintiff in error. The liability charged to the corporation is fully within the rules to be found in adjudged cases. Those which were cited sustain the principle. Banks are liable for negligence ; and the law of corporation, as it is now understood, places such bodies under the same obligations, and gives the same remedies against them as are given in the cases of individuals. They have been held answerable to this extent by this court. Clark vs. The Corporation of Washington, 12 Wheat. 40. Bank of Columbia vs. Patterson's Administrators, 7 Cranch, 209.

As to the second point. There cannot be a plea and a demurrer to the same declaration. It is competent for a defendant to plead as many matters of fact as he desires, or he may do so as to matters of law; but upon the rules of

[Fowle vs. The Common Council of Alexandria.]

pleading, both cannot be done. A demurrer admits the facts, and raises questions of law upon them; a plea puts them in issue. There is, therefore, a direct contradiction between them.

This practice does no good to the party adopting it. Nothing is decided by either course until all is decided, and the opposite party is exposed to great trouble. By pleading alone, the whole questions of law and fact which arose in the case would have been fully presented for decision. It is denied that the law of Virginia sanctions this practice. The act of Virginia, of 1784, prohibited pleading and demurring to the same declaration.

Mr Taylor and Mr Jones, for the defendants.

The plaintiff in error intended to present this question of the liability of the defendants, but this has not been done in the declaration. It is asserted by him, that the defendants, a municipal corporation, are liable to him for damages for not carrying their own laws into effect.

The suit is against the common council of Alexandria; for appointing an auctioneer, without taking a bond with sureties for the performance of his duties. The second count alleges the liability of the defendants, for suffering the auctioneer to act without having given security. It should appear what the damages sustained by the plaintiff were; and the declaration should have shown the power of the corporation, and their obligation to exercise those powers for the protection of the plaintiff from those damages.

What damages has the plaintiff sustained? It is assumed, that had the bond been taken, he would have been indemnified by its provisions, and that it would have covered the defalcations of the auctioneer. The duties of the defendants should have been specified by a reference to the laws enjoining them; the suit is in the nature of a penal action, and nothing should have been left to inference.

It has not been shown that the common council of Alexandria has the power to grant licenses to auctioneers. The law of Virginia, of 1796, gave that authority to "the mayor, aldermen and commonalty;" but does this extend to autho-

rise "the common council?" The next law gives the autho-rity to "the mayor and commonalty." There is no aver-ment that the common council is the same body with the corporations mentioned in these acts.

The counsel then went into an examination of the laws of Virginia, incorporating the city of Alexandria, and of the act of congress on the same subject, to show that the power to take a bond from an auctioneer did not exist, or had not been continued or transferred from the corporation as originally established to that now existing, and against which the suit was instituted.

They also contended; that the claim of the plaintiff pre-sented a case in which a corporation was asserted to be liable for having omitted to legislate for the protection of those who dealt with an officer acting under an authority derived from the corporation. Such a claim could not be maintained. It was also urged that had a bond been taken from the auctioneer, it would not have enured to the bene-fit of individuals transacting business with him. Its opera-tion would have been to govern his public duties, and not to operate on his private transactions. Between the corpo-ration taking such a bond, and those who dealt with the auc-tioneer, there was no such affinity as would permit them in case of default to claim the benefit of the bond. Such a provision might have been by law made, but this not hav-ing been done, its omission gave no ground of action.

As to the second point; a reference to the act of the legis-lature of Virginia, passed in 1792, would fully satisfy the court that a defendant has a right to plead and demur in the same case. This has been decided in the courts of Virginia. 4 Hen. & Munf. 276, 277. 2 Munf. 100.

Mr Swann, in reply, contended; that the acts incorporating the city of Alexandria, and particularly the acts of congress, were public acts; and it was not therefore necessary to in-troduce them into the pleadings. The court would take no-tice of those laws as public laws.

Until 1804, the corporate name of the defendants was "the mayor and the commonalty;" since that year it has been "the common council of Alexandria." The law of Virginia

at 1796, was a general public law, relating to all corporations, and became necessarily a law of this district. Without that law, the corporation had no right to license the auctioneer. The act of 1800 was passed under the authority of, the law of 1796, and that act authorises a suit on the bond of an auctioneer by the party injured.

By the law of 1804 the corporation may pass all laws not inconsistent with the laws of the United States; and the plaintiff claims the benefit of the obligation imposed by the laws. The corporation was bound to take a bond with security on granting a license to an auctioneer.

By the appointment of the auctioneer the defendants held out to the community that they had taken a bond. They gave the auctioneer the credit upon which the plaintiff trusted him with his goods. They authorised him to carry on the business out of which the loss arose; a business he could not have entered upon without the license he received from the corporation.

On a demurrer every thing is to be inferred against the party demurring. The facts are admitted, and whatever conclusion they warrant may be drawn by the court. The facts show the omission to take the bond, and the inference is authorised that this was gross negligence, for which the defendants are answerable.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

In December 1796, the general assembly of Virginia passed an act entitled " an act concerning corporations," declaring, " that from and after the passing thereof, the mayor, aldermen, and commonalty of the corporate towns within the said commonwealth, and their successors should, upon request of any person desirous thereof, grant licenses to exercise, in such town, the trade or business of an auctioneer; provided, that no such license should be granted until the person or persons requesting the same should enter into bond with one or more sufficient sureties, payable to the mayor, aldermen, and commonalty of such corporate town, and their successors, in such penalty, and with such

condition, as by the laws and ordinances of the town shall be required.

In the year 1779 the town of Alexandria was incorporated by the name of "the mayor and commonalty of the town of Alexandria." The corporation consisted of the mayor, recorder, aldermen, and common council men.

The mayor, recorder, and aldermen, and their successors, were constituted justices of the peace, with power to appoint constables, surveyors of the streets and highways, and to hold a court of hustings once in every month; and to appoint clerks, a sergeant, and other proper officers.

In the year 1800 the mayor and commonalty passed an ordinance " for licensing auctioneers agreeably to an act of the general assembly, passed on the 22d of December 1796;" by which it was enacted, that the mayor and commonalty shall grant to any person or persons during the same, a license to exercise the trade or business of an auctioneer within the town. Provided that no such license shall be granted until the person or persons applying shall enter into bond, with one or more good securities, in the sum of twenty thousand dollars, payable to the mayor and commonalty, and conditioned for the payment of the annual rent of five hundred dollars, to the mayor and commonalty, in quarterly payments, for the said office, and for the due and faithful performance of all the duties of the same; which bond shall not become void on the first recovery, but may be put in suit and prosecuted from time to time, by, and at the costs of any person injured by a breach thereof, until the whole penalty shall be recovered.

In 1804 congress passed an act " to amend the charter of Alexandria," in which provision was made for the election of a common council. The judicial duties of the mayor, recorder, and aldermen, having been transferred to the circuit court of the United States for the county of Alexandria, it was enacted that the common councils elected " and their successors shall be, and hereby are made a body politic and corporate, by the name of the common council of Alexandria." The estate, &c. vested in the mayor and commonalty was transferred to the common council, and the usual cor-

porate powers to sue and be sued, &c. to erect work-houses, &c. to provide for the police of the town, &c. were conferred on that body. They were authorised "to appoint a superintendent of police, commissioners and surveyors of the streets, constables, collectors of the taxes, and all other officers who may be deemed necessary for the execution of their laws, who shall be paid for their services a reasonable compensation, and whose duties and powers shall be prescribed in such manner as the common council shall deem fit for carrying into execution the powers hereby granted."

The twelfth section enacts "that so much of any act or acts of the general assembly of Virginia, as comes within the purview of this act, shall be, and the same is hereby repealed. Provided, that nothing herein contained shall be construed to impair or destroy any right or remedy which the mayor and commonalty of Alexandria now possess or enjoy, to or concerning any debts, claims, or demands against any person or persons whatsoever, or to repeal any of the laws and ordinances of the mayor and commonalty of the said town, now in force, which are not inconsistent with the act."

In June 1817 the common council of Alexandria passed "an act to amend the act for licensing auctioneers, and for other purposes," in the following words: "be it enacted by the common council of Alexandria, that every person or persons obtaining a license to exercise the business of an auctioneer within the town of Alexandria, shall annually apply for, and obtain a renewal of his or their license, and shall also annually renew his or their bonds for the same, in the manner provided by law; and every person failing to renew such license, and give bond annually, shall cease to exercise the business of an auctioneer, and shall be proceeded against accordingly."

The declaration, after reciting the act of 1796, and the several ordinances of the corporate body of the town of Alexandria, charges, that the common council of Alexandria, on the    day of    , in the year 1815, in the town of Alexandria, did grant a license to one Philip G. Marsteller, to exercise the trade and business of an auctioneer, within the said town, for the term of one year; and at the expiration

of the said year, did renew the said license to the said Philip G. Marsteller for one other year, and did continue to renew the said license from the end of the said last mentioned year, from year to year, until the          day of          , in the year 1819, during all which time, that is to say, from the          day of          , in the year 1815, to the          day of          , in the year 1819, he, the said Philip G. Marsteller, did exercise the trade and business of an auctioneer, in the said town of Alexandria, under the said license and authority of the said common council, and that, during the period aforesaid, the said plaintiff delivered to him, the said Philip G. Marsteller, sundry goods, wares, and merchandize, to be sold by him at auction, in the said town of Alexandria, and that the said Philip did, from time to time, during the period he so carried on the trade of an auctioneer, under the license aforesaid, sell at auction the said goods, &c. so delivered to him by the plaintiff, to the amount of $1583 09, which said sum, the said Philip, though often requested, failed to pay to the said plaintiff.

The declaration then states, that a judgment was obtained against the said Philip for the said sum, which he was totally unable to pay; by means of which premises the plaintiff became entitled to the benefit of the bond and security, which ought to have been taken by the common council previous to granting the said license to exercise the trade of auctioneer as aforesaid. Yet the defendants, not regarding their duty in that behalf, but contriving to deceive and injure the plaintiff, did not, and would not take any bond and security as aforesaid, from the said Philip G. Marsteller, during the time when the transactions aforesaid took place; but on the contrary, so carelessly, negligently, and improperly conducted themselves in the premises, that by and through the negligence, carelessness, and default of the defendants, no bond and security was taken from the said Philip, and that the money due from the said Philip was wholly lost to him, the said plaintiff, to his damage $3000.

To this declaration the defendants filed a general demurrer, and at the same time pleaded the general issue.

The counsel for the plaintiff objected to receiving at the

same time a demurrer, and a plea to the whole declaration, but the court overruled the objection, under the act of assembly, which is in these words: "the plaintiff in replevin, and the defendant in all other actions, may plead as many several matters, whether of law or fact, as he shall think necessary for his defence."

The court, having sustained the demurrer, and entered judgment for the defendants; the plaintiff has brought the cause by writ of error into this court.

The power to license auctioneers, and to take bonds for their good behaviour in office, not being one of the incidents to a corporation, must be conferred by an act of the legislature; and in executing it, the corporate body must conform to the act. The legislature of Virginia conferred this power on the mayor, aldermen, and commonalty of the several corporate towns within that commonwealth, of which Alexandria was one; " provided that no such license should be granted until the person or persons requesting the same should enter into bond, with one or more sufficient securities, payable to the mayor, aldermen, and commonalty of such corporation." This was a limitation on the power.

Though the corporate name of Alexandria was "the mayor and commonalty," it is not doubted that a bond taken in pursuance of the act would have been valid. Jones, 261.

In the year 1800, when the corporation of Alexandria determined to act upon this law, an ordinance was passed authorising " the mayor and commonalty" to grant licenses to auctioneers, provided that no such license should be granted, until bond with sufficient sureties should be given, payable to " the mayor and commonalty." It may well be doubted, whether this ordinance is sustained by the legislative act, in pursuance of which it was made. That act authorised " the mayor, aldermen and commonalty" to grant licenses to auctioneers, first taking bonds payable to the " mayor, aldermen and commonalty." The ordinance omits the " aldermen," both in the clause which empowers the body to grant licences, and in that which names the obligees in the bond.

But supposing this difficulty to be entirely removed, we

are next to inquire whether the powers to grant licenses to auctioneers, and to take bonds for the performance of their duty, which were given by the act of 1796 to the mayor, aldermen and commonalty, and by the ordinance of 1800 to the mayor and commonalty, have been transferred to, and vested in the common council of Alexandria.

This depends on the act of congress, passed in 1804, " to amend the charter of Alexandria." Under this instrument, the corporate body consists of the common council alone. The mayor is separated from them, and the aldermen are discontinued. The power of the mayor and commonalty are not transferred generally to the common council, but the powers given them are specially enumerated. We do not find, in the enumeration, the power to grant licenses to auctioneers. If it could be maintained that the repealing clause does not comprehend the act of 1796, still the act amending the charter changes the corporate body so entirely, as to require new provisions to enable it to execute the powers conferred by that act. The corporate body is organized anew, and does not retain those parts which are required for the execution of the act of 1796. An enabling clause, empowering the common council to act in the particular case, or some general clause which might embrace the particular case, is necessary under the new organization of the corporate body. It has been already said that we find no particular provision, and the general powers granted are so limited by the language of the grant, that they cannot be fairly construed to comprehend the subject of licenses to auctioneers.

It may be admitted that the ordinance of 1800 is not repealed by the act amending the charter. But that ordinance is not adapted to the new corporate body, and could not be carried into execution by the common council, till modified by some act of legislation.

The common council took up this subject in 1817, and passed the act recited in the declaration. We are relieved from inquiring whether this act removed or could remove the difficulties which have been stated, by the circumstance that the declaration changes the nonfeasance, which is the

foundation of the action, as commencing in the year 1815. We do not think any law then existed which empowered the common council of Alexandria to license auctioneers, or to take bonds for the faithful performance of their duty. The injury alleged in the declaration, as the foundation of the action, is the omission to take the bond required by law. Now if the common council was not required or enabled by law to take a bond, the action cannot be sustained.

If the declaration is to be considered as stating the cause of action to be the granting a license, without previously requiring a bond; it will not, we think, help the case. The common council has granted a license to carry on the trade of an auctioneer, which the law did not empower that body to grant. Is the town responsible for the losses sustained by individuals from the fraudulent conduct of the auctioneer? He is not the officer or agent of the corporation, but is understood to act for himself as entirely as a tavern keeper, or any other person who may carry on any business under a license from the corporate body.

Is a municipal corporation, established for the general purposes of government, with limited legislative powers, liable for losses consequent on its having misconstrued the extent of its powers, in granting a license which it had not authority to grant, without taking that security for the conduct of the person obtaining the license which its own ordinances had been supposed to require, and which might protect those who transacted business with the person acting under the license? We find no case in which this principle has been affirmed.

That corporations are bound by their contracts is admitted; that money corporations, or those carrying on business for themselves, are liable for torts, is well settled: but that a legislative corporation, established as a part of the government of the country is liable for losses sustained by a nonfeasance, by an omission of the corporate body to observe a law of its own, in which no penalty is provided, is a principle for which we can find no precedent. We are not prepared to make one in this case.

In permitting the defendant below to demur and plead to

the whole declaration, the circuit court has construed the act on that subject as it has been construed by the courts of Virginia.

There is no error, and the judgment is affirmed with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of Columbia, held in and for the county of Alexandria, and was argued by counsel ; on consideration thereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed with costs.