IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY,

## AT NOVEMBER TERM, 1868.

---

### REOCK v. MAYOR AND COMMON COUNCIL OF NEWARK.

1. The charter of Newark directed the common council to make compensation to land owners for damages caused by altering street grades such damages to be assessed in an appointed manner, and imposed on the lands benefited by the improvement—*Held*, a suit will not lie in favor of a land owner injured by the alteration of a grade, against the corporation, for the amount of the damages thus sustained, no assessment having been made of the same in the prescribed mode.
2. Nor will such suit lie for the omission of the common council to have such assessment made according to the directions of the charter.
3. Where one branch of a public corporation, possessed of legislative powers and being a part of the established government of the state fails to exert one of its functions, to the detriment of an individual or of a class of individuals, an action at law will not lie against such corporation founded on such nonfeasance.
4. In such cases the remedy is by *mandamus*.

---

Demurrer to declaration.

The plaintiff, in the first count of his declaration, alleged that he was the owner of a lot of land in Newark, and that

129

the defendants, by a resolution of the common council, altered the grade of the street along said lot, and thereby caused the damage complained of, and which was specially set out.

In the second count, the plaintiff sets out the supplement to the charter of the city of Newark, passed 1st March, 1866, which enacts, "that whenever the common council of said city of Newark should thereafter establish or change or alter a grade of any street, road, highway, or alley, or section thereof, within said city, they should make compensation to owners of property for any actual damages caused by establishing or altering or changing such grade, and that the compensation to be awarded to such owners for damages as aforesaid should constitute a part of the whole amount of costs, damages, and expenses, to be assessed as thereinafter directed, and that all proceedings for making an estimate and assessment of said damages, and to provide for the payment of the costs, damages, and expenses of establishing, altering, or changing said grade, and for the assessment thereof upon the owners of all the lands and real estate intended to be benefited thereby, should be had and taken in the manner provided by law in cases of laying out, and opening, altering, widening, straightening any street, road, highway, or alley within said city." The breach of duty specified, was that the defendants would not pay, or provide for paying, the damages sustained by the plaintiff from the cause specified in the first count.

Argued before the CHIEF JUSTICE, and Justices ELMER, BEDLE, and WOODHULL.

For the demurrer, *J. H. Stone.*

For plaintiff, *Theodore Runyon.*

BEASLEY, CHIEF JUSTICE.   The first count of this declaration is founded on the idea that whenever the grade of a public street is altered in the city of Newark, to the detri-

ment of a property owner, the corporation becomes immediately responsible to pay, in money, to the measure of such detriment. But this view, I think, is clearly erroneous. Indeed, the impolicy of such a rule is so glaringly manifest, that it would require the utmost clearness and precision of terms in the legislative act regulating the subject, to induce the belief that it was the design to establish such a scheme. The operation of the system contended for would be this: that whenever the grade of a street should be changed, all property owners conceiving themselves injured, would be at liberty to bring their actions forthwith against the municipality, and recover such sums as in that mode might be awarded. The result of such suits would be that the damages occasioned by changing the grade of the public streets would be cast as a burthen on the whole city; whereas, by the act before referred to, such burthen is imposed on the lands in the locality benefited by the improvement. Independently of any statutory assistance, it is obvious that, according to the legal rule settled by the decisions in this state, the plaintiff could not support an action for the damages in question. His right of suit is altogether the creature of the act, and we are, consequently, to look at the legislative intention for the nature and extent of such right. It is true, as was remarked on the argument, that the supplement to the charter of this city, directs the common council to make compensation to the owners of property for the actual damages caused by the alteration of the grade of a street; but the same clause provides the mode in which the amount of such damages is to be ascertained, that is, an estimation and assessment are to be made "in the manner provided by law in cases of laying out and opening, &c., any street, &c., within said city. The model here referred to is found in the charter of Newark. *Pamph. Laws*, 1857, *p.* 164. And the provision is that commissioners are to be appointed by the common council, who are to make, observing certain specified formalities, an estimate and assessment of the damages for taking and appropriating the lands for the street, and that such damages

are to be assessed on the lands benefited. The privilege of a trial by jury is also given, by way of appeal, to any land owner who may conceive himself aggrieved by the action of the commissioners. This is the procedure appointed in case of taking lands for opening or widening a street; and the same mode is provided when a grade is to be changed. Here is a system, then, manifestly incompatible with any rule which will sustain the action in this case. The statutory direction is clear, that these damages are to be assessed on the lands benefited; but if this cause should go to trial, how could the amount of the verdict be levied in this special manner? It appears clear that if the plaintiff should be permitted to proceed, his success would take from this particular locality the cost of this improvement, and put it in the form of a general tax on the citizens at large. This would be conspicuously violative of the intention of the legislature, and would be unjust in itself. There are several other contrarieties between the method prescribed by the act and the course of proceeding adopted by the plaintiff in this suit, which are apparent and are important, but which it is unnecessary to mention. My view of the general effect of this act is, that while it gives damages to the party injured by the alteration of a street grade, it directs the assessment of those damages to be made in a particular mode, and their payment out of a particular fund, and that, as a result, the plaintiff cannot sue at large, but must pursue his remedy in the appointed course.

Nor have I found any better legal foundation to the second count of this declaration. Its *gravamen* is, that the common council did not provide, in the mode prescribed in the act above referred to, for the payment of the damages sustained. But I find neither precedent nor principle for such a suit. The neglect complained of is a mere nonfeasance by the city council in a branch of city government. Assuming the truth of the facts alleged, this official body owed it as a duty to the citizens at large, to have these damages assessed upon the property benefited, and the non-performance of that public

duty, as has been repeatedly decided, will not lay the ground for a suit by a person, even though he may have suffered peculiar injury. The application of the opposite doctrine to that class of cases to which the present belongs, would be attended with very great mischiefs. Suppose a common council should fail in its obligation to order a tax in the mode or at the time ordained—could persons injured by such neglect bring suits against the corporation founded on that cause? If we admit such a principle, the *litigious vexation* would be endless—for every official non-feasance would raise a liability to a swarm of suits. In the case of *Fowle* v. *Common Council of Alexandria*, 3 *Pet.* 398, the facts were, that the common council had granted a license to an auctioneer, without taking from him a bond, as required by law, and from which negligence the plaintiff suffered a loss; but the court decided, that from such circumstances no suable liability arose. The ground of judgment was, that there was no precedent for such a suit, and that the court would not make one. In the present case, these defendants are a public corporation, possessed of legislative powers, and are a part of the established government of the state, and, in my opinion, it would be not only highly impolitic, but also inconsistent with well founded general principles, to hold that because one branch of such corporation has failed in this particular case to exercise one of its functions, given to it for the public good, it is competent for all persons, being one or a multitude, who may conceive themselves injured by such inaction, to bring their actions against it. As to both counts, I think the demurrer should be sustained.

It was suggested, on the argument, that unless this suit would lie, the plaintiff would be without remedy. But this conclusion does not seem warranted, as the remedy by *mandamus* seems to be clear. *The King* v. *Commissioners of Sewers*, 2 *Ld. Raym.* 1479.

Demurrer sustained.

Cited *in Morrison* v. *Bernards,* 7 *Vr.* 221 ; *Paret* v. *Bayonne,* 11 *Vr.* 562.