FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SEAN ALLEN; STANLEY GRAHAM; BRADLEY TAYLOR; JUANITA WIGGINS; JAMES KIRKLAND; ERIC LIDDLE; ANTONIO RICHARDSON,
*Plaintiffs-Appellants*,

v.

SANTA CLARA COUNTY CORRECTIONAL PEACE OFFICERS ASSOCIATION; COUNTY OF SANTA CLARA; ROB BONTA,[*]
*Defendants-Appellees*,

and

MARK GREGERSEN; ERIC BANKS; PRISCILLA WINSLOW; ERICH SHINERS; ARTHUR A. KRANTZ,
*Defendants*,

v.

WILLIAM D. BRICE,
*Movant.*

No. 19-17217

D.C. No.
2:18-cv-02230-MCE-CKD

OPINION

---

[*] Rob Bonta has been substituted for his predecessor, Xavier Becerra, as California Attorney General under Fed. R. App. P. 43(c)(2).

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted October 22, 2021
San Francisco, California

Filed June 23, 2022

Before:  Bridget S. Bade and Patrick J. Bumatay, Circuit
Judges, and William K. Sessions III,** District Judge.

Per Curiam Opinion;
Concurrence by Judge Bumatay

---

## SUMMARY***

---

### Civil Rights

The panel affirmed the district court's dismissal of a claim for monetary relief bought pursuant to 42 U.S.C. § 1983 by public-sector employees against their union and the County of Santa Clara, holding that municipalities are entitled to a good faith defense to a suit for a refund of mandatory agency fees under § 1983.

---

** The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

*** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

In light of *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), which held that the compulsory collection of agency fees by unions violates the First Amendment, several public-sector employees ("Employees") filed a class action lawsuit under § 1983 seeking to retroactively recover any agency fees taken from their salaries by the Santa Clara County Correctional Peace Officers Association and Santa Clara County. The district court dismissed the action against both parties, holding that their "good faith" reliance on pre-*Janus* law meant that they need not return the agency fees.

Following the district court's dismissal, this court held in *Danielson v. Inslee*, 945 F.3d 1096 (9th Cir. 2019), that private parties, including unions, may invoke an affirmative defense of good faith to retrospective monetary liability under § 1983, where they acted in direct reliance on then-binding Supreme Court precedent and presumptively-valid state law. The Employees conceded that *Danielson* resolved their claims against their union.

The panel concluded that, because unions get a good faith defense under *Danielson* to a claim for a refund of pre-*Janus* agency fees, and municipalities' tort liability for proprietary actions is the same as private parties, Santa Clara County was also entitled to a good faith defense to retrospective § 1983 liability for collecting pre-*Janus* agency fees. The panel explained that *Danielson*'s reasoning—which relied on precedent and principles of equality and fairness—also applied with equal force to municipalities.

Concurring, Judge Bumatay agreed that the panel was bound by *Danielson*, but wrote that *Danielson* deviated from precedent by asserting that the existence of § 1983 defenses turns not on the strictures of common law, but on principles

of equality and fairness. Judge Bumatay also concluded that, under the common law as it stood in 1871, it appeared that Santa Clara County would receive immunity. However, Judge Bumatay wrote that, reaching the right result was no excuse for shifting focus away from the common law inquiry required by the Supreme Court and allowing judges to substitute their own policy preferences for the mandates of Congress.

## COUNSEL

Jonathan F. Mitchell (argued), Mitchell Law PLLC, Austin, Texas; Talcott J. Franklin, Talcott Franklin PC, Dallas, Texas; for Plaintiffs-Appellants.

Grant A. Winter (argued), Mastagni Holstedt APC, Sacramento, California, for Defendant-Appellee Santa Clara County Correctional Peace Officers Association.

P. Casey Pitts (argued), Altshuler Berzon LLP, San Francisco, California; James R. Williams, County Counsel; Nancy J. Clark, Deputy County Counsel, Office of the County Counsel, County of Santa Clara, San Jose, California, for Defendant-Appellee County of Santa Clara.

Anthony P. O'Brien (argued), Deputy Attorney General; Benjamin M. Glickman, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, Attorney General; Office of the Attorney General, Sacramento, California; for Defendant-Appellee Rob Bonta.

**OPINION**

PER CURIAM:

Several years ago, the Supreme Court overruled its own precedent on the free speech rights of public-sector employees. Overturning more than forty years of caselaw, the Court held that public-sector unions may not collect compulsory "agency fees" from non-union public employees because the practice violates the employees' First Amendment rights. *See Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018). Before *Janus*, the Court permitted such mandatory collection in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). In California, state law also authorized the compulsory collection of agency fees from public employees. *See* Cal. Gov't Code § 3502.5.

In light of *Janus*, several public-sector employees including Sean Allen, Stanley Graham, Bradley Taylor, and Juanita Wiggins (collectively, "Employees") filed a class action lawsuit under 42 U.S.C. § 1983 seeking to retroactively recover any agency fees taken from their salaries by the Santa Clara County Correctional Peace Officers Association ("Union") and Santa Clara County ("County"). After *Janus*, the Union stopped collecting mandatory agency fees from nonconsenting public employees. But in this case, the Employees want a refund for the fees that were previously taken. The Employees seek to hold the County jointly and severally liable with the Union for compelling them to pay the pre-*Janus* agency fees taken in violation of their First Amendment rights.

The Union moved to dismiss the action, claiming that it was entitled to a good faith defense against § 1983 liability because its actions were expressly authorized by *Abood* and

state law. The County joined the Union's motion to dismiss. The district court dismissed the action against both parties, holding that their "good faith" reliance on pre-*Janus* law meant that they need not return the agency fees.

Following dismissal in the district court, we addressed whether *unions* are entitled to a good faith defense for the pre-*Janus* compulsory collection of agency fees. We held that private parties, including unions, "may invoke an affirmative defense of good faith to retrospective monetary liability under 42 U.S.C. § 1983, where they acted in direct reliance on then-binding Supreme Court precedent and presumptively-valid state law." *Danielson v. Inslee*, 945 F.3d 1096, 1097 (9th Cir. 2019).

As they must, the Employees concede that *Danielson* resolves their claim against the Union. So, all that's left for us to decide is whether the County is also entitled to the good faith affirmative defense that we addressed in *Danielson*.[1] We review this question de novo. *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). Based on binding precedent, we affirm.

## I.

Although left undecided in *Danielson*, that case preordains our decision here. In *Danielson*, we held that a

---

[1] The district court also dismissed the Employees' constitutional challenge to exclusive union representation and to California's system for deducting agency fees from public employees' paychecks, *see* Cal. Gov't Code § 1157.12(b). The Employees concede that binding precedent forecloses their challenge to exclusive representation and only seek to preserve that claim for further appellate review, and the Employees do not pursue their challenge to section 1157.12(b) in this appeal. We do not address them here.

union may assert a good faith defense in an action to recover retroactive agency fees if the union relied on binding Supreme Court precedent and state law in assessing the fees. 945 F.3d at 1097. Private parties may "rely on judicial pronouncements of what the law is, without exposing themselves to potential liability for doing so." *Id.* And precedent recognizes that municipalities are generally liable in the same way as private corporations in § 1983 actions. *See Owen v. City of Independence*, 445 U.S. 622, 645–47 (1980). It therefore follows that the rule announced in *Danielson* for unions also applies to municipalities. We thus hold that municipalities are entitled to a good faith defense to a suit for a refund of mandatory agency fees under § 1983.

## 1.

Before turning to the merits, however, we first consider whether the Employees forfeited their argument that a municipality cannot assert a good faith defense. The County argues that the Employees failed to make that precise argument before the district court, so we cannot consider it now. We disagree.

The district court dismissed the Employees' claim against both the Union and the County based on the good faith defense. Although the Employees did not argue that a separate good faith analysis applies to municipalities, the Employees argued that a good faith defense was categorically unavailable in a § 1983 action premised on a return of property or funds taken in violation of constitutional rights. "As the Supreme Court has made clear, it is claims that are deemed waived or forfeited, not arguments." *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). Appellants can make any argument in support of their claim on appeal—they are "not limited to the precise arguments they made below." *Yee v.*

*City of Escondido*, 503 U.S. 519, 534 (1992). The Employees' argument that municipalities are not entitled to a good faith defense is not a new claim but is, instead, a new argument in support of their consistent claim that good faith is not a defense to a claim for return of property that was unconstitutionally taken. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 378–79 (1995). The Employees thus did not forfeit their argument against a municipality's good faith defense, and we may proceed to the merits.

### 2.

We next address whether municipalities, like the County, may invoke the affirmative defense of good faith in a § 1983 action seeking the return of compulsory agency fees collected before *Janus*. In *Danielson*, we concluded that a union may do so when the "conduct was directly authorized under both state law and decades of Supreme Court jurisprudence." 945 F.3d at 1098–99. In reaching that conclusion, we relied on (1) precedent, *id.* at 1099–1100, and (2) "principles of equality and fairness," *id.* at 1101. Looking to those same considerations here, we conclude that *Danielson*'s reasoning applies with equal force to municipalities.

### A.

To begin, *Danielson* looked to precedent to determine whether private parties, such as unions, may assert a good faith defense to § 1983 liability. *Id.* at 1099–1100. Although the Supreme Court never answered the question, we noted that the Court left open the possibility of private-party good faith in dicta. *Id.* (citing *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992) and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n.23 (1982)). For example, in *Wyatt*, while ruling

against qualified immunity for private parties, the Court expressly did "not foreclose the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith." 504 U.S. at 168–69 (citation omitted).

Examining our own precedent, *Danielson* observed that we had already recognized that private parties may invoke a good faith defense to § 1983 liability. 945 F.3d at 1099. In *Clement v. City of Glendale*, we said, "courts have previously held open the possibility that private defendants may assert a 'good faith' defense to a section 1983 claim" and held that the facts of the case justified such a defense. 518 F.3d 1090, 1097 (9th Cir. 2008).

In *Danielson*, we then rejected the contention that we should depart from *Clement* based on an apparent conflict with another precedent. *Danielson*, 945 F.3d at 1099 (noting tensions between *Clement* and *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983)). Because we read *Howerton* to only foreclose *qualified immunity* for private parties, we concluded we were "bound" by *Clement* and found it "dispositive" on whether a private party could assert a good faith defense. *Id.* at 1099–1100.

Turning to this case, precedent also supports a municipality's ability to invoke a good faith defense in a § 1983 action. Contrary to the Employees' contention, the Supreme Court did not rule out such a defense for municipalities in *Owen*. In *Owen*, the Court rejected "a construction of § 1983 that would accord municipalities a qualified immunity for their good-faith constitutional violations." 445 U.S. at 650. In explaining its rationale, the Court stated that the "municipality may not assert the good faith of its officers or agents as a defense to liability under

§ 1983." *Id.* at 638. The Employees take this statement to mean that a municipality may not assert a good faith defense.

We do not read *Owen* so broadly. When speaking of "good faith," the Court discussed it only in terms of qualified immunity, not the affirmative defense of good faith at issue here. To understand this limitation, we must examine the Court's reasoning. Looking to history to determine whether a city could claim qualified immunity, the Court found "no tradition of immunity for municipal corporations." *Id.* The Court acknowledged, however, that two common-law doctrines afforded municipalities some measure of protection from tort liability. *Id.* at 644. The first distinguished between a municipality's "governmental" and "proprietary" functions; the second immunized a municipality's "discretionary" or "legislative" acts, but not "ministerial" ones. *Id.* These traditional municipal immunities, the Court reasoned, were either abrogated by § 1983 or unable to serve as a sufficient foundation for qualified immunity. *Id.* at 644–50.

First, as for the governmental/proprietary dichotomy, the Court explained that municipal corporations have a "dual nature"—they serve as both (1) a corporate body, "capable of performing the same 'proprietary' functions as any private corporation," and (2) "an arm of the State," acting in a "governmental or public capacity." *Id.* at 644–45 (internal quotation marks omitted). At common law, municipalities were subject to different protections based on this distinction. When acting in a "governmental" capacity, municipalities enjoyed the "immunity traditionally accorded the sovereign." *Id.* at 645. On the other hand, when a municipality operated in its "proprietary" role, no special governmental protection shielded it from liability. *Id.* In that situation, a municipality was "held to the same standards

of liability as any private corporation" and "liable for its torts in the same manner and to the same extent" as a private corporation. *Id.* at 644–45.

Next, as for the discretionary/ministerial distinction, the Court noted that the separation of powers was the source of discretionary act immunity. *Id.* at 648. The doctrine developed to limit judicial intrusion into the "reasonableness" of a municipality's public policy judgments. *See id.* This doctrine does not confer qualified immunity in the § 1983 context, according to the Court, because liability under § 1983 doesn't "seek to second-guess" a municipality's policy decisions, but ensures its compliance with the Constitution and federal law. *Id.* at 649. In other words, a municipality has no "discretion" to violate the Constitution, so such discretionary judgments would not be protected by qualified immunity. *Id.*

The Court then held that § 1983 abrogated any immunity based on governmental functions. *Id.* at 647–48. By enacting § 1983, the Court held that "Congress . . . abolished whatever vestige of the State's sovereign immunity the municipality possessed." *Id.* But, since the "proprietary" function conferred no tort immunity to begin with, *Owen* left untouched a municipality's defenses as a "private corporation." *See id.* at 645.

The takeaway is that *Owen* was a case about qualified immunity, so its references to "good faith" were made only in that context, not to the affirmative defense of good faith available to private litigants. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166 (1993) (noting that, in *Owen*, the Court "rejected a claim that municipalities should be afforded qualified immunity, much like that afforded individual officials, based on the good faith of their agents"). Indeed, the Court later clarified

that "a distinction exists between an 'immunity from suit' and other kinds of legal defenses," like the good faith defense.  *Richardson v. McKnight*, 521 U.S. 399, 403 (1997); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (stating that qualified immunity is "an *immunity from suit* rather than a mere defense to liability").  So while *Owen* closed the door on municipal qualified immunity, it did not decide whether municipalities could assert a good faith defense.

Yet *Owen* makes clear that, although a municipality may lack a special governmental immunity, it is still otherwise treated "in the same manner and to the same extent" as a private corporation for tort liability.  445 U.S. at 645; *see also Sethy v. Alameda Cnty. Water Dist.*, 545 F.2d 1157, 1161 (9th Cir. 1976) (noting that "under the common law of most states in 1866," "[w]hen acting in a 'proprietary' capacity, . . . municipalities were still liable in the same manner as private entities").  As a corollary, we think that means municipalities are permitted legal defenses "in the same manner and to the same extent" as private corporations.  After all, § 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).

Here, the County merely facilitated the collection of agency fees for the Union.  According to the Employees, the County served as a middleman deducting the agency fees from their paychecks and transferring the funds to the Union at the Union's request.  The County acted in a proprietary capacity in so doing.  *See Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1183 (9th Cir. 2006) ("[A] government does not ordinarily benefit the general public when it acts in a proprietary capacity."); *Air Cal, Inc. v. City & Cnty. of San*

*Francisco*, 865 F.2d 1112, 1117 (9th Cir. 1989) ("The proprietary power . . . generally encompasses the City's ability as owner to enter into private commercial relationships."); *see also City of Portland v. United States*, 969 F.3d 1020, 1045 (9th Cir. 2020) (explaining that city did not act in proprietary capacity when the action "serve[d] a public purpose, and . . . regulated in the public interest, not in the financial interests of the cities"). At the time, the County acted under a presumptively valid state law permitting the payroll deductions. *See* Cal. Gov't Code § 3502.5. And because unions may assert a good faith defense in an action to recover these compulsory fees as a matter of law, *Danielson*, 945 F.3d at 1103–04, so too may municipalities. We decline to hold municipalities to a different standard than we held unions in *Danielson*.

## B.

*Danielson* next grounded its good faith analysis on "principles of equality and fairness." *Id.* at 1101. *Danielson* observed that the Supreme Court and our court's precedents were both driven by such "values." *Id.* As an example, *Danielson* noted that we applied the good faith defense in *Clement* because "[t]he company did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions." *Id.* (alteration in original) (quoting *Clement*, 518 F.3d at 1096–97). According to *Danielson*, the Supreme Court also cited "'principles of equality and fairness' as the basis for a potential good faith defense" in *Wyatt*. *Id.* (quoting *Wyatt*, 504 U.S. at 168).

Through this lens, *Danielson* suggested that it would be "neither 'equal' nor 'fair'" to withhold the good faith defense to a private party whose actions were entirely "innocen[t]." *See id.* at 1101. The union in that case faced

"monetary liability *not* for flouting [the] law or misinterpreting its bounds, but for adhering to it." *Id.* at 1103. And the very "purpose" of the good faith defense was to allow private parties "to rely on binding judicial pronouncements and state law without concern that they will be held retroactively liable for changing precedents." *Id.* at 1100. Otherwise, "[i]f private parties could no longer rely on the pronouncements of even the nation's highest court to steer clear of liability," we cautioned, "it could have a destabilizing impact on the judicial system." *Id.* at 1104.

*Danielson* also held that the equities weighed against requiring a refund of the mandatory fees collected before the *Janus* decision. *Id.* at 1103. The *Danielson* plaintiffs argued that the good faith defense only applied to liability for damages and could not shield against an action for restitution of fees. *Id.* at 1102. Although we challenged the restitutionary premise, we said that, even if correct, denying a refund was "equitable" because the union "b[ore] no fault" in following state law and Supreme Court precedent. *Id.* at 1103. Instead, the union "collected and spent fees under the assumption—sanctioned by the nation's highest court— that its conduct was constitutional." *Id.* We also balanced the benefit the plaintiff employees received with the services provided by the union. *Id.* Indeed, we noted it "would not be equitable to order the transfer of funds from one innocent actor to another, particularly where the latter received a benefit from the exchange." *Id.*

The same "principles of equality and fairness" apply to the County. The County relied on the same Supreme Court pronouncements and the same state law in complying with the mandatory agency fee system. As noted, *Abood* remained binding authority until it was overruled by *Janus*. And nothing in the law suggested that municipalities would

be liable when the unions were not.  In fact, the County bore far less fault than the unions—it gained nothing from collecting the agency fees for the Union.  It was simply a middleman transferring the agency fees at the Union's request.  So equity weighs even more strongly in favor of granting the good faith defense to the County.

## II.

Because, under *Danielson*, unions get a good faith defense to a claim for a refund of pre-*Janus* agency fees, *Danielson*, 945 F.3d at 1105, and municipalities' tort liability for proprietary actions is the same as private parties, *Owen*, 445 U.S. at 639–40, the County is also entitled to a good faith defense to retrospective § 1983 liability for collecting pre-*Janus* agency fees.

**AFFIRMED.**

---

BUMATAY, Circuit Judge, concurring:

> "[W]hen judges test their individual notions of 'fairness' against an American tradition that is deep and broad and continuing, it is not the tradition that is on trial, but the judges." – Justice Antonin Scalia, *Schad v. Arizona*, 501 U.S. 624, 650 (1991) (concurring).

No case reflects Justice Scalia's concerns better than this one.  When deciding the scope of liability under 42 U.S.C. § 1983, the Supreme Court has repeatedly told us what to do—"we look to the general principles of tort immunities and defenses applicable at common law." *Filarsky v. Delia*, 566 U.S. 377, 384 (2012) (simplified); *see also Tower v.*

*Glover*, 467 U.S. 914, 920 (1984) ("Section 1983 immunities are predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." (simplified)).  We take this approach because we did not think that Congress would depart from a common law "tradition so well grounded in history and reason" through § 1983's broad language. *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).  Thus, in any case breaking new ground on § 1983 defenses, the first place we turn is our history and common law.

Despite these repeated instructions, we ignored that command in *Danielson v. Inslee*, 945 F.3d 1096 (9th Cir. 2019).  Rather than engaging in the historical inquiry mandated by the Court, *Danielson* instead appealed to amorphous "principles of equality and fairness" in deciding whether unions must pay back the money forcibly taken from the paychecks of public employees in violation of their constitutional rights.  *Id.* at 1101.  We said no, because we believed that "equality and fairness" dictated granting the unions a good faith defense as a matter of law.  *See id.* at 1103–04.  That move was wrongheaded.

First off, as a historical matter, there may be reason to doubt that private parties were entitled to a good faith affirmative defense.  *Compare Diamond v. Pa. State Educ. Ass'n*, 972 F.3d 262, 289 (3d Cir. 2020) (Phipps, J., dissenting) ("Good faith was not firmly rooted as an affirmative defense in the common law in 1871, and treating it as one is inconsistent with the history and the purpose of § 1983."), *with Wyatt v. Cole*, 504 U.S. 158, 176 (1992) (Rehnquist, C.J., dissenting) ("[I]t is clear that at the time § 1983 was adopted, there generally was available to private parties a good-faith defense to the torts of malicious prosecution and abuse of process.").

But whether the common law ultimately supports a good faith defense for private parties is almost beside the point. *Danielson* shouldn't have so easily disregarded the historical inquiry in favor of its newfangled "equality and fairness" test. While looking toward history isn't perfect and won't eliminate all discretionary calls, it at least provides a common ground to approach critical legal questions and "forces judges to put their cards on the table." *See Duncan v. Bonta*, 19 F.4th 1087, 1149 (9th Cir. 2021) (en banc) (Bumatay, J., dissenting). And doing so best respects the separation of powers by giving meaning to the words Congress chose rather than providing our own gloss on the law. So *Danielson*'s policy-driven test is really just another way to substitute legal principles for judicial preferences. Now, judges need only consult their own views of what's "equal" and what's "fair" to excuse constitutional violations.

Of course, as a three-judge panel, we are bound by *Danielson*, and so I agree with the per curiam opinion's application of that case to municipalities. It makes little sense to let unions off the hook, but then charge municipalities with refunding the money taken from public employees to subsidize union activity. Indeed, even if we followed the well-defined road paved by the Supreme Court, we would likely end up at the same place. That's because the common law at the time of § 1983's enactment appears to have recognized municipal immunity under the facts here.

So while I express doubts about our circuit's precedent, I concur in the opinion of the court.

## I.

Section 1983 provides that a party "shall be liable" for the violation of rights "secured by the Constitution and laws" under the color of state law. 42 U.S.C. § 1983. On its face,

§ 1983 grants no defenses or immunities. *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). But the Supreme Court has held that § 1983 didn't abrogate settled common law defenses and immunities. *Id.* at 418. Instead, the "tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons," the Court recognized that Congress would have expressly provided for the abolition of the doctrine if it wished to do so. *Owen v. City of Independence*, 445 U.S. 622, 637 (1980) (simplified).

Thus, to determine whether a defense is available in a § 1983 action, we "first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted." *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). For example, the Court considered the "settled principle" of common law immunities for judges to shield them from liability in a § 1983 action. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Likewise, the common law supported prosecutorial immunity to § 1983 liability. *Imbler*, 424 U.S. at 421–24. This "historical inquiry [is] mandated by" § 1983. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1871 (2017) (Thomas, J., concurring).

*Danielson* deviated from this precedent to assert that the existence of § 1983 defenses turns not on "the strictures of common law," but on "principles of equality and fairness." 945 F.3d at 1101. According to *Danielson*, courts may shield a lawbreaker from § 1983 liability by treating the party as an "innocent actor" under undefined concepts of "equality and fairness." *Id.* at 1103. As an example, *Danielson* pointed to *Clement v. City of Glendale*, 518 F.3d 1090, 1096–97 (9th Cir. 2008). *Id.* at 1101. In that case, we apparently granted a private party a good faith defense because the company "did its best to follow the law and had

no reason to suspect that there would be a constitutional challenge to its actions." *Id.* (quoting *Clement*, 518 F.3d at 1096–97). So, in other words, common law immunities are irrelevant because liability turns on whether we believe a lawbreaker "did its best" and was sufficiently ignorant of its violation of law.

*Danielson* claimed the Supreme Court embraced those "values" as the basis for finding a good faith defense to § 1983 liability in *Wyatt v. Cole*, 504 U.S. 158, 168 (1992). *See* 945 F.3d at 1101. But that's simply not the case. In fact, *Wyatt* said nearly the opposite. Look at the Court's words—

> Although principles of equality and fairness may suggest . . . that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability, as do their government counterparts, such interests are not sufficiently similar to the traditional purposes of qualified immunity to justify such an expansion.

504 U.S. at 168. This is no endorsement of an "equality and fairness" test. Contrary to *Danielson*, "[r]ather than open the door to an independent defense based on 'principles of equality and fairness,' this statement asserts that, at least in the context of private-party § 1983 defendants, equality and fairness considerations are not significant enough in themselves to warrant divergence from the common-law model[.]" *Diamond*, 972 F.3d at 278 (Fisher, J., concurring). In short, *Danielson* turned an inquiry that the Court expressly considered "not sufficient[]" into the centerpiece of § 1983 liability. We should not have been so brazen.

What's worse, in discarding a historical inquiry in favor of the "values" of equality and fairness, *Danielson* showed a shocking lack of understanding of the nature and meaning of our common law. 945 F.3d at 1101. *Danielson* called "rigid adherence" to a common law inquiry as "oft-arbitrary." *Id*. It also described appeals to common law immunities as resorting to "historical idiosyncrasies" requiring "strained legal analogies." *Id.* I could not disagree more.

To disparage the common law as "arbitrary" or "idiosyncratic" profoundly misunderstands its nature and role in American jurisprudence. "The common law is a beautiful system; containing the wisdom and experience of ages." *Penny v. Little*, 4 Ill. 301, 304 (1841). Its principles "grew into use by gradual adoption" and resulted from "the application of the dictates of natural justice and of cultivated reason to particular cases." *Solen v. Virginia & T.R. Co.*, 15 Nev. 313, 326 (1880) (quoting 1 J. Kent, Commentaries on American Law 471 (1826) ("Kent")). In other words, common law is "not the product of the wisdom of some one man, or society of men, in any one age; but of the wisdom, counsel, experience, and observation, of many ages of wise and observing men." *Gamble v. United States*, 139 S. Ct. 1960, 1983 (2019) (Thomas, J., concurring) (quoting Kent, *supra*, at 439–40). It is based on the "collective, systematic development of the law through reason," rather than arbitrary dictates of individual judges. *Id.* (citing Thomas Sowell, *A Conflict of Visions: Ideological Origins of Political Struggles* 49–55 (1987)). Given that the common law has been discerned, refined, and tested over hundreds of years, its principles are not "arbitrary" or "idiosyncratic" mistakes to be cavalierly tossed aside. It was peak judicial arrogance for *Danielson* to do so.

Strict adherence to a common law inquiry is also grounded in the separation of powers. Congress chose broad words in enacting the law—it determined that "[e]very person . . . shall be liable" for violating federal law without exception. 42 U.S.C. § 1983. Well-recognized historical immunities from liability were permitted because Congress would not have abrogated a fundamental part of the common law without saying so. *Tenney*, 341 U.S. at 376. But those historical immunities should be the beginning and the end. When courts start to expand beyond the common law, we begin to replace Congress's will with our own. But it's not our job to consult our "freewheeling policy choices" to determine winners and losers under § 1983. *Ziglar*, 137 S. Ct. at 1871 (Thomas, J., concurring) (simplified).

By relying on vague notions of "equality and fairness," *Danielson* creates a judicial blackbox where judges can veer away from established legal principles and instead focus on modern-day preferences. As Justice Scalia observed, in the name of equality and fairness, judges can "mistake their own predilections for the law." Antonin Scalia, *Originalism: The Lesser Evil*, 57 U. Cin. L. Rev. 849, 863 (1989). But we should not have endorsed such "policy-judgment-couched-as-law." *Stenberg v. Carhart*, 530 U.S. 914, 955 (2000) (Scalia, J., dissenting). As the Supreme Court has noted, courts "do not have a license to establish immunities from § 1983 actions in the interests of what [they] judge to be sound public policy." *Tower*, 467 U.S. at 922–23. *Danielson*'s "principles of equality and fairness" improperly created such a license.

*Danielson*'s own analysis reveals the unprincipled nature of that license. The Supreme Court had ruled that "[c]ompelling a person to *subsidize* the speech of other private speakers" violates the First Amendment. *Janus v.*

*Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018) (simplified).  As the Court held, public employees were not only forced to support ideas antithetical to their values, but also lost real wages for years. *See, e.g.*, William Baude & Eugene Volokh, *Compelled Subsidies and the First Amendment*, 132 Harv. L. Rev. 171, 171 (2018) ("The employees in *Janus* were not compelled to speak or to associate.  They were compelled to pay[.]").  Rather than focus on the obvious monetary damages the employees faced, *Danielson* dismissed the public employees' injury as a mere "intangible dignitary harm" entitled to no redress.  945 F.3d at 1102.  Such judicial recharacterization of the employees' injury is made easy under an amorphous "equality and fairness" test.

In short, in holding that unions get a good faith defense for § 1983 liability, *Danielson* took a major detour from the proper inquiry.  We should have followed the well-travelled road set by Congress and condoned by years of Supreme Court precedent.

## II.

That leaves open the question—if we had conducted the proper common law inquiry here, what might the answer be?  A brief look at history appears to lead in the same direction as the per curiam opinion.  According to a leading treatise on municipal corporations from the late nineteenth century, "[a] municipal corporation is not liable to a private individual for losses caused by its having *misconstrued the extent of its powers*" when the damages were not caused by the municipality's officer or agent.  2 John F. Dillon, *The Law of Municipal Corporations* § 755, at 863–64 (2d ed. 1873) ("Dillon").  Such a principle favors municipal immunity here.

The Supreme Court's decision in *Fowle v. Common Council of Alexandria*, 3 Pet. 398 (1830), illustrates this principle. In *Fowle*, the Court held that a municipality was not responsible for the damages caused by an independent third party even though the municipality unlawfully granted the third party a license to do business within the town. *Id.* There, a businessman sued the common council of Alexandria, Virginia for granting a license to an auctioneer without requiring the auctioneer to post a surety bond as required by state law. *Id.* at 406. The businessman sought $3,000 in damages from Alexandria after the auctioneer sold his "sundry goods, wares, and merchandize" without paying him back. *Id.* It turned out that, because of complications of federal and state law, the common council was not empowered to issue auctioneer licenses or take bonds. *Id.* at 407–08. And since the common council was not legally able to authorize a license and bond, the businessman's action against the municipality could not be sustained. *Id.* at 409.

In dismissing the action, Chief Justice Marshall asked,

> Is the town responsible for the losses sustained by individuals from the fraudulent conduct of the auctioneer? He is not the officer or agent of the corporation, but is understood to act for himself as entirely as a tavern keeper, or any other person who may carry on any business under a license from the corporate body.
>
> Is a municipal corporation, established for the general purposes of government, with limited legislative powers, liable for losses consequent on its having misconstrued the

> extent of its powers, in granting a license which it had not authority to grant, without taking that security for the conduct of the person obtaining the license which its own ordinances had been supposed to require, and which might protect those who transacted business with the person acting under the license? We find no case in which this principle has been affirmed.

*Id.*   The Court then concluded that a rule establishing municipal liability for losses sustained by "a non-feasance, by an omission of the corporate body to observe a law of its own, in which no penalty is provided" has no precedent and it refused to make one in that case.  *Id.*

So under the common law as it stood in 1871, it appears that a municipality would not be responsible for the damages caused by independent parties even if the municipality sanctioned the actions of the third party under a misinterpretation of law.  Applied here, Santa Clara County would receive such immunity.   Even if the County unconstitutionally permitted the public sector unions to take mandatory dues from the paychecks of its employees, it did not receive the funds for its own benefit.  Under such "non-feasance," the common law strongly warrants immunity.[1]

---

[1] On the other hand, the same treatise observed that a "municipal corporation may be liable as respects illegal and void acts, where these are within the scope of the general powers of the corporation, and where the enforcement of such acts by its officers under its authority has been compulsory, resulting in injury to individuals."  Dillon, *supra*, § 771, at 883–84 (emphasis omitted).  So a municipality must "refund void taxes and assessments compulsorily collected for *its own benefit*."  *Id.* (emphasis added).  Since the public employees don't allege that Santa

## III.

*Danielson* was wrong to create a "principles of equality and fairness" test.  Even if a proper look at common law history points in the same direction in this case, that was "mere fortuity."  *Ziglar*, 137 S. Ct. at 1872 (Thomas, J., concurring). Reaching the right result is no excuse for shifting our focus away from the common law inquiry required by the Court and "substitut[ing] our own policy preferences for the mandates of Congress."  *Id.*  But since we are bound by precedent, I concur fully in the per curiam opinion.

---

Clara County acted for "its own benefit" here, this line of tort liability doesn't appear to apply.